FILED
SCRANTON

SEP 2 8 2009

PER _____ lmt
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BOBBIE LEE SIMS, JR.,      :

        Plaintiff,       :

            :      Case No. 3:09-CV-0033

      v.           :

            :      (Judge Kosik)

JOSEPH PIAZZA, et al.,       :

        Defendants     :

## MEMORANDUM

Presently before us is the Report and Recommendation ("R&R") of Magistrate Judge Thomas M. Blewitt, filed June 9, 2009, as well as Plaintiff's Objection to the R&R. For the reasons that follow, we will adopt the R&R of the Magistrate Judge and remand Plaintiff's Eighth Amendment cruel and unusual punishment claim (Count I) to the Magistrate Judge for further proceedings. We have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and § 1343, because the claims in the Complaint raise federal questions.

### PROCEDURAL HISTORY

On January 8, 2009, Plaintiff, Bobbie Lee Sims, Jr., currently an inmate at the State Correctional Institution at Coal Township, Pennsylvania, filed his original Complaint[1] pursuant to 42 U.S.C. § 1983. (Doc. 1.) The action was assigned to Magistrate Judge Thomas M. Blewitt. Following a screening of the Complaint pursuant to 28 U.S.C. § 1915, the Magistrate Judge

---

[1] Defendants to Plaintiff's Complaint are as follows: (1) Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"); (2) Unit Manager Larry Kaskie; (3) Major David McAnnaney; (4) Health Care Administrator Kathryn McCarty; (5) Deputy Robert McMillian; (6) Security Captain Michael Miller; (7) Major Joseph Mushinski; (8) Superintendent Joseph Piazza; (9) Deputy David Varano; and (10) Chief Grievance Officer Cindy Watson. We will refer to Defendants by their last names unless clarity requires further identification.

1

issued an R&R on February 4, 2009 ("February R&R"). (Doc. 7.) Although Plaintiff did not object to the February R&R, which we adopted on March 23, 2009 ("March Order") (Doc. 12), he did file an Amending and Incorporating Complaint on February 23, 2009 ("Amending/Incorporating Complaint") (Doc. 9). The Amending/Incorporating Complaint lacked clear allegations and was incomplete. (Doc. 9.)

Our March Order adopting the February R&R dismissed Defendants Beard, Watson, and Mushinski from this action. (Docs. 12, 13.) The March Order also dismissed a number of Plaintiff's claims for relief, including all Plaintiff's claims arising under state law. (Docs. 12, 13.) We subsequently remanded the case to the Magistrate Judge for further review of Plaintiff's Amending/Incorporating Complaint. (Docs. 12, 13.)

On April 1, 2009, in an effort to clarify the record and proceedings, the Magistrate Judge ordered Plaintiff to file a proper amended complaint. (Doc. 14.) Plaintiff asked for and was granted an extension to file a re-drafted complaint. (See Docs. 16, 17.) On May 11, 2009, Plaintiff filed his Amended Complaint.[2] (Doc. 19.) The Amended Complaint consists of five causes of action and a request for damages. Specifically, Plaintiff alleges:

1) That Defendants Beard, Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, Varano, and Watson violated Plaintiff's Eighth Amendment rights against cruel and unusual punishment by continuing to use the so-called red

---

[2] Plaintiff added the following defendants to the Amended Complaint: (1) Captain Eddie Baumback; (2) Superintendent/Grievance Facility Coordinator Kandis Dascani; (3) Deputy Superintendent Ronda Ellett; (4) Security Lieutenant R. E. Long; (5) Security Officer Richard McMillian (to whom we will refer by his full name to differentiate him from Deputy Robert McMillian, one of the original defendants); and (6) Acting Grievance Officer Dorino Varner. Plaintiff also renames Defendants Beard, Mushinski, and Watson, who we dismissed from this action in our March Order.

light system or allowing its continued use despite evidence that it was harming Plaintiff ("Count I");

2) That Defendants Dascani, Varano, and Varner violated Plaintiff's First Amendment right to petition the government for a redress of grievances, as well as his Fifth and Fourteenth Amendment due process rights, by not filing or properly assessing his grievances regarding the red light system ("Count II");

3) That Defendants Ellett and McCarty violated Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights by denying him medical treatment for his diabetes and high blood pressure ("Count III");

4) That Defendants Baumback, Beard, Ellett, McAnnaney, Richard McMillian, Long, and Varano violated Plaintiff's First Amendment right to petition the government for a redress of grievances by retaliating against him when he filed grievances and/or allowing such retaliation to occur ("Count IV"); and

5) That Defendants Ellett, McMillian, Long, and Varano violated Plaintiff's First Amendment right to petition the government for a redress of grievances and his Fifth and Fourteenth Amendment due process and equal protection rights by removing him from his job in the Dietary Food Service Department ("Count V").

On June 9, 2009, Magistrate Judge Blewitt filed his R&R ("June R&R") addressing the allegations of Plaintiff's Amended Complaint. (Doc. 23.) Plaintiff filed his Objections to the June R&R on August 14, 2009. (Doc. 32.) The Magistrate Judge's June R&R and Plaintiff's Objections are presently before us and ripe for adjudication. For the reasons that follow, we adopt the June R&R.

3

We summarize the factual allegations of Plaintiff's Amended Complaint as follows:

On February 26, 2008, Plaintiff was transferred to the SCI-Coal Township's Restricted Housing Unit ("RHU") from another facility until space opened up for him in general prison housing. After his transfer to the prison, Plaintiff alleges that he began to experience sleeping problems, which he attributes to the nighttime security system in place at the prison. Although the main lights in the RHU are turned off at 10:00 PM each evening, a red light system illuminates inmates' cells between 10:00 PM and 6:00 AM to ensure that inmates are in their cells during the night (the "red light system"). The prison also uses the red light system in the general prisoner housing. The red light system remained in use despite Plaintiff's concerns, which he raised with Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano, as well as his psychiatrist and psychologist.

Plaintiff alleges he suffered from a variety of symptoms, including sleep disorder, headaches, dry, burning eyes, mood swings, an inability to concentrate, confused memory, and exacerbation and worsening control of his diabetes and high blood pressure, both of which are chronic conditions. In addition to trying to physically block the red light by putting towels and socks over his head, Plaintiff made numerous attempts to resolve the problem informally with prison staff. None of these attempted solutions was successful.

Concurrently, Plaintiff alleges that the Prison failed to provide treatment for Plaintiff's diabetes and high blood pressure for five days during April 2008. During that time, Plaintiff was taking a number of medications, some of which were administered three times per day. Plaintiff admits that the prison staff provided him with insulin during this period to lower his risk of diabetic coma. When Plaintiff informed Defendants McCarty, Piazza, and Varano that he was

not receiving his medications, Defendants Piazza and McCarty allegedly told Plaintiff "not to make such a big deal out of it." Despite reassurances from Defendants Piazza and Varano that Plaintiff would receive his medications in the future, Plaintiff again went without medication from September 25, 2008, until September 30, 2008. Plaintiff does not allege that either of these incidents caused him harm.

On April 21, 2008, Plaintiff filed the first of several formal grievances through the prison's grievance system (first grievance).[3] In this grievance, Plaintiff detailed the use of the red light system and its adverse effect on him. Plaintiff exhausted the appeals process for this grievance, which was ultimately denied. In July of 2008, a doctor evaluated Plaintiff and referred him to an optometrist. The optometrist found evidence of damage to Plaintiff's eyes and prescribed dark glasses and lubricating eye drops to alleviate Plaintiff's light sensitivity and dry eyes.

On June 30, 3008, prison security officers searched Plaintiff's cell. As a result of this search, the guards confiscated some of Plaintiff's personal items, namely four decks of playing cards, three ink pens, and a cookie bowl. Plaintiff attempted to get his personal items back through informal channels but was unsuccessful.

On July 3, 2008, Plaintiff filed a grievance against Defendant McCarty to address his medical problems (second grievance), which were exacerbated by the red light system. Plaintiff exhausted the appeals process for this grievance on August 6, 2008, without meaningful resolution. Plaintiff's written and verbal communications with Defendant Beard, the Secretary of the DOC, were similarly unfruitful.

---

[3] Because Plaintiff's grievances are numerous, we find it helpful to number them and will do so in parentheses in the sentence in which each grievance first appears.

On July 8, 2008, Plaintiff filed a grievance based on the confiscation of Plaintiff's personal items (third grievance). Plaintiff also solicited Defendant Beard for help, at which point Defendant Beard ordered the prison to return Plaintiff's personal items. Defendant Long, a security lieutenant, returned Plaintiff's playing cards and pens and compensated Plaintiff twelve times over for the value of Plaintiff's cookie bowl, which had been destroyed. In light of this resolution, Plaintiff withdrew his grievance regarding the confiscation.

On July 31, 2008, Plaintiff filed a second grievance regarding the red light system (fourth grievance). Plaintiff alleges that Defendant Dascani refused to process this grievance or address any of Plaintiff's requests for resolution on the grounds that Plaintiff had already filed an unsuccessful grievance regarding the red light system.

On September 25, 2008, Plaintiff was again deprived of his diabetes and high blood pressure medications for five days, as noted above. Plaintiff filed a grievance regarding the deprivation of his medications against Defendant McCarty (fifth grievance). On October 10, 2008, Defendant Ellett, who is Defendant McCarty's superior, confronted Plaintiff with a copy of Plaintiff's grievance. Defendant Ellett allegedly demanded that Plaintiff withdraw the grievance, which Plaintiff refused to do. Defendant Ellett allegedly told Plaintiff that withdrawing the grievance would be in Plaintiff's best interest. Plaintiff alleges that Defendant Ellett informed him that, "[W]e play team ball at this [f]acility, don't make problems and there will be none[.] [N]ow sign off on the grievance before you find yourself in segregation." (Doc. 19 at 17, ¶ 91.) Plaintiff then withdrew his grievance.

Plaintiff continued to speak with Defendant McCarty regarding his medications after withdrawing his grievance. Plaintiff alleges that on one occasion, Defendant McCarty told him,

> [Y]ou are fortunate to be receiving any medication, if you were that concern[ed] regarding your health and medication[,] you should not have

6

committed crimes, and you could have your own private physician[.] [I]f it
were left up to me there would be no Chronical [sic] Care, and you felons
would pay top dollar for any medical treatment or services, and don't you ever
question my job prescription [sic] again or you will be placed in segregation[.]
(Doc. 19, p. 17, ¶ 91.)

When Plaintiff reported Defendant McCarty's remarks, Defendant Ellett warned Plaintiff not to

speak with Defendant McCarty or any other staff member about Plaintiff's medications or

Defendant McCarty's remarks again.

On November 10, 2008, Defendant Long, the officer who had previously returned

Plaintiff's personal items on Defendant Beard's orders, conducted another search of Plaintiff's

cell. As a result of this search, security guards confiscated seven pairs of prescription eyeglasses.

Defendant Richard McMillian also poured Plaintiff's lotion into the toilet during this search.

On November 17, 2008, Plaintiff filed a grievance based on the confiscation of his

eyeglasses and the disposal of his lotion (sixth grievance). In this grievance, Plaintiff alleged

that Defendants confiscated his eyeglasses in retaliation for Plaintiff's success in getting his

playing cards and pens, which were confiscated during the first cell search, returned to him.

Defendants Baumback and Ellett reviewed Plaintiff's grievance. Although Defendant Ellett

acknowledged that Plaintiff was allowed to possess eyeglasses under prison policy, she allegedly

told Plaintiff that, "[Y]ou can't and won't win them all, we play team ball here[.] [W]ith all the

grievance[s] and law suits [sic] you've filed you should recognize a lost [cause] when you see

one, maybe you'll write and tell Secretary (Defendant) Beard that." (Doc. 19 at 20, ¶ 114.) On

December 4, 2008, Defendant Baumback officially denied Plaintiff's grievance. Defendants

Varano and Varner similarly denied the grievance on appeal and final review, respectively.

Shortly after Defendant Varner denied Plaintiff's eyeglass grievance on final review on

January 21, 2009, Plaintiff spoke to Defendant Long, who told him, "My girl Dorina (Varner)

7

decided with me on this one, so that makes us even[. Y]ou won the first grievance and ran to (Defendant) Beard, I won the second one with my girl Dorina. Now, was the 15 ice cream tickets (the compensation for Plaintiff's cookie bowl) worth it[?]" (Doc. 19 at 21, ¶ 123.) Additionally, Defendant Long allegedly told Plaintiff that the reason other inmates were permitted to possess personal items such as eyeglasses was because, "other inmates do not file grievance[s], law-suits and run crying to Sec[retary] (Defendant) Beard like you do, is that good enough[?]" (Doc. 19 at 22, ¶ 125.)

From April 2008 until February 26, 2009, Plaintiff worked in the Dietary Food Services Department in the prison. During this time, Plaintiff became convinced that prison staff were getting special side dishes that were unavailable to inmates. In addition to raising this concern with Defendants Ellett, Long, McMillian, and Varano, Plaintiff wrote to other individuals, including individuals in the Auditor General's Office and the Federal Bureau of Investigation, to request an independent investigation regarding the side dishes.

On February 26, 2009, Defendant Kaskie informed Plaintiff that he was being terminated from his employment with the Dietary Food Services Department. Plaintiff filed a grievance regarding his termination on March 3, 2009 (seventh grievance), which Defendants Miller and Varano denied on appeal and final review, respectively.

Plaintiff filed his original Complaint in this matter on January 8, 2009, and his Amended Complaint on May 11, 2009. He now objects to the Magistrate Judge's June R&R.

DISCUSSION

I.     **Standard of Review**

The Federal Magistrates Act, 28 U.S.C. § 636, provides that a United States district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the

court." 28 U.S.C. § 636(b)(1)(A). Where a party objects to the magistrate judge's findings and recommendations, a district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Although the court's review is *de novo*, the court is permitted by statute to rely upon the magistrate judge's proposed recommendations to the extent the court, in the exercise of sound discretion, deems proper. United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

Pursuant to the Federal Rules of Civil Procedure, a plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests") (internal citations omitted). The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1949–50 (2009) ("Threadbare recitals of

elements of a cause of action, supported by mere conclusory statements" do not satisfy the requirements of Rule 8.).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The court should not dismiss a complaint that shows that the pleader is entitled to relief.

The Court of Appeals for the Third Circuit has instructed us to read pro se complaints liberally, especially pro se prisoners, who "are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims." Spruill, 372 F.3d at 236 n.12 (citing Alston v. Parker, 363 F.3d 229, 233–34 & n.6 (3d Cir. 2004)).

## II.     Objections

We note as a preliminary matter that Plaintiff's Objections span some twenty-nine pages, one page more that the June R&R. The majority of Plaintiff's Objections reiterates the allegations of the Amended Complaint and cites case law to support his claims. We read Plaintiff's filings liberally because of his pro se status and will address the recommendations of the June R&R and Plaintiff's contentions *seriatim*.

### A.    Defendant Beard

In the June R&R, the Magistrate Judge reiterated the recommendation from his February R&R that we should dismiss Defendant Beard from the present case.  We agree and will adopt the findings of the June R&R with respect to Defendant Beard.

In order for § 1983 liability to be appropriate, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge and acquiescence," and must be pled with particularity.  Id.

When we issued our March Order adopting the February R&R, we dismissed Defendant Beard based on the allegations of Plaintiff's original Complaint.  Defendant Beard is the Secretary of the Pennsylvania Department of Corrections and is not involved in the daily operations of the facilities he oversees.  While Plaintiff alleges that he communicated with Defendant Beard about his grievances with the prison and its staff, including his complaints about the red light system, Plaintiff fails to allege that Defendant Beard formally or informally endorsed the other defendants' treatment of Plaintiff.  Additionally, rather than alleging new facts in his Amended Complaint and Objections, Plaintiff merely asserts that his case would be "greatly prejudiced" if we were to dismiss Defendant Beard.  While we read Plaintiff's filings liberally because of his pro se status, these statements are simply insufficient to retain Defendant Beard as a party in this action.

We will therefore dismiss Defendant Beard from the present action.

**B.     Defendant Watson**

The Magistrate Judge also recommended the dismissal of Defendant Watson in both the February and June R&Rs. As the Magistrate Judge notes, Defendant Watson's name appears once in Plaintiff's entire Amended Complaint; Plaintiff lists Defendant Watson along with a number of other Defendants to whom he addressed complaints regarding the red light system. Because Plaintiff asserts no specific claim against Defendant Watson other than listing her in this manner, we will adopt the Magistrate Judge's R&R with regard to Defendant Watson and dismiss her from the present case.

**C.     Count I: Red Light System Claim**

The gravamen of Plaintiff's Amended Complaint centers on the prison's use of the red light system. Plaintiff alleges that this system violated his Eighth Amendment right against cruel and unusual punishment because it caused him serious physical and psychological harm, as well as exacerbating his diabetes and high blood pressure. In the June R&R, the Magistrate Judge recommended that we allow Plaintiff to proceed on this claim with regard to Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano, and remand the claim back to the Magistrate Judge for further proceedings. We agree and will remand Count I to the Magistrate Judge with regard to the above-named defendants.

Although "the Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones," Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)), and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," id. (quoting Helling v. McKinney, 509 U.S 25, 31 (1993)). At minimum, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take

reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). The Eighth Amendment also "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" Id. (citing Gregg, 428 U.S. at 183; Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

Not all harms violate the Eighth Amendment, however. See Farmer, 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,' … [it] must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. (internal citations omitted). Proving that one has been deprived of the minimal civilized measures of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

Second, "[the] prison official must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). "In prison-condition cases[,] that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "[D]eliberate indifference entails something more than mere negligence … it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial

risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

In the present case, Plaintiff suffered a variety of physical and psychological ailments, either as a result of or exacerbated by the use of the red light system. The red light system also deprived Plaintiff of any meaningful measure of sleep, one of life's necessities. Plaintiff complained exhaustively to Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano regarding the red light system, hoping to informally resolve the situation. When informal resolution proved ineffective, Plaintiff filed numerous grievances, with similar lack of effect. Finally, Plaintiff brought suit. We agree with the Magistrate Judge that Plaintiff's Amended Complaint states an Eighth Amendment cruel and unusual punishment claim with respect to the use of the red light system. We will therefore remand Plaintiff's Count I to the Magistrate Judge with regard to Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano for further proceedings.

**D.      Count II: Denial of Due Process/Right to Redress Grievances Claim**

Plaintiff alleges that Defendants Dascani, Varner, and Varano violated his Fourteenth Amendment due process rights by denying his grievances and grievance appeals with regard to the red light system. Similarly, Plaintiff alleges that Defendants Baumback, Ellett, Varner, and Varano violated his Fourteenth Amendment due process rights involving the confiscation and destruction of his personal items, namely Plaintiff's eyeglasses and lotion. The Magistrate Judge recommended that we dismiss these claims. We agree and will adopt the June R&R with regard to Plaintiff's Fourteenth Amendment due process violation claims.

The Magistrate Judge has clearly and concisely summarized the applicable case law in the June R&R, which we quote here:

14

> The law is well-settled that there is no constitutional right to a grievance
> procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S.
> 199, 137-38 (1977). This very Court has also recognized that grievance
> procedures are not constitutionally mandated. See Chimenti v. Kimber, Civil No.
> 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed
> in part, C.A. No. 03-2056 (3d Cir. June 8, 2005) (Non-Precedential). Even if the
> prison provides for a grievance procedure, as the DOC does, violations of those
> procedures do not amount to a civil rights cause of action. Mann v. Adams, 855
> F.2d 639, 640 (9th Cir. 1988), cert denied, 488 U.S. 898 (1988); Hoover v.
> Watson, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F.3d 1226 (3d Cir. 1995).
> (June R&R, p. 12.)

Accordingly, even where a prisoner alleges that the defendants in his case "failed to properly

investigate, process, and/or consider his grievances," such allegations "do not state a claim upon

which relief may be granted under 42 U.S.C § 1983." O'Connell v. Sobina, 2008 WL 144199,

*17 (W.D. Pa.) (citing Burnside v Moser, 138 Fed. Appx. 414, 416 (3d Cir. 2005)).

In the present case, Plaintiff's allegations that Defendants did not properly handle

Plaintiff's grievances do not rise to the level of a Fourteenth Amendment due process claim.

Plaintiff participated in the prison's grievance system. While the outcomes produced by the

grievance procedures did not satisfy Plaintiff, neither did they bestow upon him a substantive

constitutional right to litigate the grievance procedures in court. As noted previously, Plaintiff is

not without recourse as to the underlying treatment about which he complains: he can address his

objections to the prison's use of the red light system through his Eighth Amendment cruel and

unusual punishment claim.

For the foregoing reasons, we will dismiss Plaintiff's Fourteenth Amendment due process

claims in their entirety as recommended by the Magistrate Judge. Additionally, we will dismiss

Defendant Dascani from the case as Plaintiff has not alleged any personal involvement by this

Defendant outside of this claim.

### E.    Count III: Denial of Medical Treatment Claim

In addition to his Eighth Amendment claim regarding the red light system, Plaintiff also alleges that Defendants Ellett and McCarty violated his Eighth Amendment rights against cruel and unusual punishment by denying him appropriate medical care for his high blood pressure and diabetes.  The Magistrate Judge recommends that we dismiss Plaintiff's denial of medical treatment claim.    We agree and will dismiss this claim.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  Giles v. Kearney, No. 07-4140, at 23 (3d Cir. Jul. 15, 2009).  Deliberate indifference may be shown by intentionally denying or delaying medical care such that the prisoner is exposed to a sufficiently substantial risk of serious damage to his future health.  Id.; Farmer, 511 U.S. at 843; Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To be liable under the Eighth Amendment, a prisoner official must have known and disregarded an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 282.  "Under the deliberate indifference reckless standard, 'prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk.'"  Giles v. Kearney, No. 07-4140, at 23–24 (3d Cir. Jul. 15, 2009) (quoting Farmer, 511 U.S. at 844)).

Only unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners are egregious enough to rise to the level of a constitutional violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  Deliberate indifference can be (1)

intending to inflict pain on a prisoner, (2) denying reasonable requests for medical treatment that result in undue suffering or the threat of tangible residual injury, (3) knowing about the need for the inmate's medical care but intentionally refusing to provide such care, (4) delaying necessary medical treatment for non-medical reasons, and/or (5) providing an easier and less efficacious treatment to the inmate. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Neither allegations of medical malpractice, negligence, nor disagreement as to the proper medical treatment are sufficient to establish a Constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

A medical need is serious if (1) a doctor has diagnosed the malady as needing treatment, (2) the malady is so obvious that a lay person could easily recognize the need for a doctor, (3) the delay or denial of adequate medical care results in unnecessary and wanton pain, and/or (4) the delay or denial of treatment results in a life-long handicap or permanent loss. See Monmouth County Corr. Inst. Inmates, 834 F.2d at 347.

In Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996), an arrestee brought a § 1983 suit against the police officers who arrested and detained him. The arrestee's suit relied on the officers' denial of appropriate medical care for his diabetes after his arrest. Id. at 849. Despite the fact that he exhibited symptoms of insulin shock, including severe sweating, a swollen tongue, ringing in his ears, and loss of consciousness, the officers held the arrestee in detention for roughly three hours without treatment. Id. at 849-50. When the arrestee's wife arrived, she gave him an insulin shot and yogurt, which alleviated his condition somewhat. Id. The officers, however, provided the arrestee with nothing else but water during the remainder of his detention.

Id. at 850. The Second Circuit Court of Appeals found that the officers' behavior constituted deliberate indifference to the arrestee's serious medical needs. Id.

Similarly, in Natale v. Camden, 318 F.3d 575 (3d Cir. 2003), a detainee who was an insulin-dependent diabetic brought suit against the detaining prison's health services department under § 1983 for failure to administer insulin to him for the first twenty-one hours of his incarceration. The detainee alleged that this delay caused him to suffer a stroke. Id. at 578. The Third Circuit Court of Appeals agreed and reversed the district court's grant of summary judgment. Id. at 585.

We distinguish the present case from Natale and Weyant, where the delay or denial of medical treatment resulted in serious medical harm to the plaintiffs and the officers' indifference was patent. Here, as the Magistrate Judge notes in his June R&R, Plaintiff admits that the prison provided a number of medications for him in order to address his health problems (namely Glipizide, Aspirlow, Enalapril, and Metformin). (Doc. 19, p. 16, ¶ 85.) Plaintiff also admits that, rather than showing indifference to his medical needs, the prison staff supplied him with insulin to lower his risk of diabetic coma. (Id.) Moreover, unlike the plaintiffs in Natale and Weyant, Plaintiff makes no allegations that the delays in receiving his medications in April and September of 2008 caused him medical harm.

For the foregoing reasons, we find that Plaintiff's allegations with regard to his medical treatment do not rise to the level of an Eighth Amendment claim. We will therefore adopt the Magistrate Judge's recommendation and dismiss Plaintiff's denial of medical treatment claim.

**F.     Count IV: Retaliation Claim**

Plaintiff alleges that Defendants Ellett, McMillian, Long, and Varano retaliated against Plaintiff for exercising his constitutional right to access to the courts by confiscating a number of

pairs of his eyeglasses and emptying his lotion into a toilet. While we find that Plaintiff was engaged in constitutionally-protected conduct, we agree with the Magistrate Judge that the confiscation of Plaintiff's eyeglasses and the destruction of his lotion was not sufficient retaliatory action to support a constitutional claim. We will therefore dismiss Plaintiff's retaliation claim in its entirety.

Where a prisoner alleges retaliation, he must show: "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mattis v. Dohman, 260 Fed. App'x. 458, 460 (3d Cir. 2008). "Although prisoners do have a constitutionally protected right to seek redress of their grievances, that right is the right of access to the courts, and such a right is not compromised by the failure of the prison to address the inmate's grievances." Hudson v. Donate, 2007 WL 1217401, *2 (M.D. Pa.) (citing Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997)). "Rejection or denial of a grievance, even on erroneous grounds, does not perforce suggest a retaliatory motive." Alexander v. Forr, 2006 WL 2796412, *3 (M.D. Pa.).

Additionally, the prisoner bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial motivating factor'" in the retaliation. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)). "[T]he court should approach prisoner claims of retaliation 'with skepticism and particular care' due to the 'near inevitability' that prisoners will take exception with the decisions of prison officials and 'the ease with which claims of retaliation may be fabricated.'" Alexander, 2006 WL 2796412 at *22. See also, Rauser, 241 F.3d at 331-34 (transfer to another facility far from family and home, changing prisoner's classification, which adversely affected his rate of

pay for prison jobs, and refusing to recommend him for parole were sufficient acts by the Department of Corrections to constitute retaliation when prisoner objected on religious grounds to having to complete an Alcoholics Anonymous program).

In the present case, as the Magistrate Judge notes, prison officials confiscated Plaintiff's personal items, namely several pairs of eyeglasses and some lotion. While the loss of his personal items may have upset Plaintiff, we find that their confiscation was not sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Indeed, it did not deter Plaintiff, who filed another grievance regarding the loss of his Dietary Food Services Department job. We will therefore dismiss Plaintiff's retaliation claim.

### G. Count V: Loss of Position with Dietary Food Services Claim

The Magistrate Judge recommends that we dismiss Plaintiff's claim involving his termination from his Dietary Food Services Department position regardless of whether we understand Plaintiff's claim to implicate Fourteenth or First Amendment rights. We agree and will dismiss Count V of Plaintiff's Amended Complaint.

"It is uniformly well established throughout the federal circuits that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment." Cummings v. Banner, 1991 WL 238149, *5 (E.D. Pa.) (citing James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989)). As a result, due process protections do not apply. See Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) (citing Bd. of Regents v. Roth, 408 U.S. 564 (1972)).

Insofar as Plaintiff grounds his claim in Fourteenth Amendment due process protections, the claim fails because Plaintiff's interest in his job is not a property interest that due process can protect. Moreover, as the Magistrate Judge points out, inasmuch as Plaintiff attempts to raise a

First Amendment retaliation claim, the same legal framework applies to this claim as to his claim regarding the confiscation of his personal items. Because Plaintiff had no property interest in his job and there is no other indication that his work was a constitutionally protected activity, a First Amendment retaliation claim is inapplicable. For the foregoing reasons, we will dismiss Count V of Plaintiff's Amended Complaint. An appropriate order follows.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

BOBBIE LEE SIMS, JR.,                    :

      Plaintiff,                              :

                             :        Case No. 3:09-CV-0033

      v.                                      :

JOSEPH PIAZZA, et al.,                   :        (Judge Kosik)

      Defendants.                             :

## ORDER

AND NOW, this _28_ day of September, 2009, IT IS HEREBY ORDERED THAT:

1.   The Report and Recommendation of Magistrate Judge Thomas M. Blewitt dated June 9, 2009 (Doc. 23) is **ADOPTED**.

2.   We **DISMISS** in part the above-captioned action as follows:

    a.   We dismiss all claims against Defendants Beard and Watson pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);
    b.   We dismiss Counts II, III, IV, and V; and
    c.   We dismiss Plaintiff's claims for monetary damages against all Defendants in their official capacities.

3.   We strike from the Amended Complaint Plaintiff's request for specific amounts of monetary damages from each Defendant, as to both compensatory and punitive damages.

4.   We **REMAND** the above-captioned action to the Magistrate Judge for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano (Count I).

_____
Edwin M. Kosik
United States District Judge

22