IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBIE LEE SIMS, JR., | : | CIVIL ACTION NO. **3:CV-09-0033** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOSEPH PIAZZA, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On January 8, 2009, Plaintiff, Bobbie Lee Sims, Jr., formerly an inmate at the State Correctional Institution at Coal Township ("SCI-Coal Township"), Coal Township, Pennsylvania, originally filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff properly filed his action in the United States District Court for the Middle District of Pennsylvania since he is an inmate in the Middle District of Pennsylvania, his claims related to his confinement in the Middle District of Pennsylvania, and all original Defendants except two (Beard and Watson) were employed at the prison located in the Middle District of Pennsylvania. Plaintiff also filed an *in forma pauperis* Motion. (Doc. 2).[1]

Plaintiff named the following ten (10) Defendants in his original Complaint: Superintendent Joseph Piazza; Deputy Robert Macmillian; Deputy David Varan; Major David McAnnaney; Major Joseph Mushinski; Unit Manager Larry Kaskie; Security Captain Miller; Jeffery A. Beard, Secretary

---

[1]Plaintiff was transferred from SCI-Coal Township on October 19, 2010, and he is currently confined at SCI-Rockview. (Doc. 121). Plaintiff's remaining Eighth Amendment claim relates only to his confinement at SCI-Coal Township.

of the Pennsylvania Department of Corrections ("DOC"); Cindy Watson, Chief Grievance Officer; and Kathryn McCarty, Health Care Administrator. (Doc. 1, pp. 1-5).

On February 4, 2009, we screened Plaintiff's original Complaint pursuant to the Prison Litigation Reform Act ("PLRA") and issued a Report and Recommendation. ("R&R"). We recommended, in pertinent part, as follows:

> this case be dismissed as to all claims against supervisory Defendant Beard pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). It is also recommended that Plaintiff's Eighth Amendment cruel and unusual punishment claim proceed as against (7) Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Health Care Administrator McCarty, and Defendant Major McAnnaney. Further, we recommend that Plaintiff's Fourteenth Amendment due process claim be dismissed entirely from this case, and that Defendant Watson and Defendant Mushinski be dismissed from this case. We recommend that Plaintiff's First Amendment denial of access to courts claim, his §1983 conspiracy claim and his Eighth Amendment denial of proper medical care claim be dismissed entirely from this case.

> It is additionally recommended that Plaintiff's relief request for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damages, be stricken from the Complaint. It is recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed. Moreover, it is recommended that Plaintiff's state law claims be dismissed and that any claims for monetary damages under the Pennsylvania Constitution be dismissed.

> Finally, it is recommended that this case be remanded to the undersigned for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Health Care Administrator McCarty, and Defendant Major McAnnaney.

(Doc. 7).

2

On February 23, 2009, while our Report and Recommendation (Doc. 7) was pending before the Court, Plaintiff filed an "Amending and Incorporating Complaint." (Doc. 9). Plaintiff's "Amending and Incorporating Complaint" was not a complete Complaint. It had a cover page and a list of Defendants to be added, and started, in substance, on page 18 and ended on page 28. This document was merely a continuation of Plaintiff's original Complaint, which ended on page 17. In his "Amending and Incorporating Complaint," Plaintiff seemingly re-named ten Defendants from his original Complaint, namely, DOC Secretary Beard[2], Superintendent Varano and former Superintendent Joseph Piazza; Deputy Superintendent Robert Macmillian; Major David McAnnaney and Major Joseph Mushinski; Unit Manager Larry Kaskie; Intelligence Captain Michael Miller; Health Care Administrator Kathryn McCarty, and Chief Grievance Officer Cindy Watson. The Amending and Incorporating Complaint also added six new Defendants to those listed in his original Complaint, namely: Ronda Ellett, Deputy Superintendent; Eddie Baumback, Captain of Security; R. E. Long, Security Lt.; Richard McMillian, Security Team; and Kandis K. Dascani, Assistant to Superintendent and Grievance Coordinator. (Doc. 9, p. 2).

Plaintiff did not file any objections to our Doc. 7 R&R.

On March 23, 2009, the District Court issued a Memorandum and Order (Docs. 12 and 13), in which it directed as follows:

> (1) The Report and Recommendation of Magistrate Judge Thomas M. Blewitt dated February 4, 2009 (Document 7) is ADOPTED.
>
> (2) The above-captioned action is dismissed as to all claims against

---

[2]Defendant Beard was dismissed entirely from this case by the District Court in its March 23, 2009 Order. (Doc. 13).

supervisory Defendant Beard pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); Plaintiff's Fourteenth Amendment due process claim is dismissed entirely from this case, and Defendant Watson and Defendant Mushinski are dismissed from this case; Plaintiff's First Amendment denial of access to courts claim, his § 1983 conspiracy claim and his Eighth Amendment denial of proper medical care claim are dismissed entirely from this case; Plaintiff's relief request for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damages, are stricken from the Compliant; Plaintiff's claims for monetary damages against Defendants in their official capacities are dismissed; and Plaintiff's state law claims are dismissed and any claims for monetary damages under the Pennsylvania Constitution are dismissed.

(3) The above-captioned action is REMANDED to the Magistrate Judge for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Health Care Administrator McCarty, and Defendant Major McAnnaney, and for further proceedings regarding the "Amending and Incorporating Complaint."

(Doc. 13, pp. 1-2).

On April 1, 2009, the undersigned Magistrate Judge issued an Order allowing the Plaintiff to file a complete Amended Complaint. (Doc. 14). Plaintiff filed his Amended Complaint on May 11, 2009. (Doc. 19).

Plaintiff correctly stated in his amended pleading that this Court has jurisdiction over this § 1983 civil rights case pursuant to 28 U.S.C. § 1331 and § 1343. (Doc. 19, p. 1). We then screened the Plaintiff's Amended Complaint as required by the PLRA.[3]

On June 9, 2009, we issued an R&R regarding Plaintiff's Amended Complaint and we

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). The Prison Litigation Reform Act of 1995 (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

recommended as follows:

> that this case be dismissed as to all claims against supervisory Defendant Beard pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), that Defendant Watson be dismissed since no specific claim is made against her. It is also recommended that Plaintiff's Eighth Amendment cruel and unusual punishment claim proceed as against (8) Defendants, namely, Unit Manager Kaskie, former Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Major Mushinski, and Major McAnnaney. Moreover, it is recommended that all of Plaintiff's Fourteenth Amendment due process claims be dismissed entirely from this case. Additionally, it is recommended that Plaintiff's First Amendment denial of access to courts claim and his Eighth Amendment denial of proper medical care claim be dismissed entirely from this case. It is further recommended that all Plaintiff's First Amendment retaliation claims be dismissed from this case.
>
> It is additionally recommended that Plaintiff's relief request for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damages, be stricken from his Amended Complaint. (Doc. 19, pp. 25-26). It is recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.[4] Moreover, it is recommended that Plaintiff's state tort law claims be dismissed.
>
> Finally, it is recommended that this case be remanded to the undersigned for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski, and Defendant Major McAnnaney.

(Doc. 23).

On September 28, 2009, the District Court issued a Memorandum and Order (Docs. 12 and 13), and adopted our June 2009 R&R. The Court directed as follows:

1. The Report and Recommendation of Magistrate Judge Thomas M. Blewitt dated June 9, 2009 (Doc. 23) is **ADOPTED**.

---

[4]Plaintiff stated that he sues all Defendants in both their individual and official capacities (Doc. 19, p. 25). Plaintiff cannot seek monetary damages against Defendants in their official capacities. *See Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir.) (Non-Precedential).

2.    We **DISMISS** in part the above-captioned action as follows:

    a.    We dismiss all claims against Defendants Beard and Watson pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

    b.    We dismiss Counts II, III, IV, and V; and

    c.    We dismiss Plaintiff's claims for monetary damages against all Defendants in their official capacities.

3.    We strike from the Amended Complaint Plaintiff's request for specific amounts of monetary damages from each Defendant, as to both compensatory and punitive damages.

4.    We **REMAND** the above-captioned action to the Magistrate Judge for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano (Count I).

(Doc. 34, p. 22).[5]

Thus, Plaintiff was permitted to proceed only with respect to his Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski, and Defendant Major McAnnaney. (*Id.*)

On September 30, 2010, we directed that the remaining eight (8) Defendants be served with the Summons and Plaintiff's Amended Complaint. (Doc. 35). Defendants were served and after being granted more time, jointly filed an Answer to Plaintiff's Amended Complaint with Affirmative Defenses, on December 29, 2010. (Doc. 45).

Discovery then ensued, including the taking of Plaintiff's deposition. (*See* Doc. 108, Att. 1). The discovery deadline expired on June 29, 2010. (Doc. 60).

---

[5]*See* 2009 WL 3147800 (M.D. Pa. 9-28-09).

On July 28, 2010, Defendants jointly filed, through counsel, a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 based on their contention that the security light used at SCI-Coal Township was only a five watt bulb and gave off minimal light, and as such did not constitute cruel and unusual punishment under the Eighth Amendment. **(Doc. 106)**. Defendants also simultaneously filed their support brief with attached case law, as well as their Statement of Material Facts ("SMF"), as required by Local Rule 56.1, M.D. Pa. (Docs. 109 and 107). Defendants also filed an Appendix of exhibits in support of their motion. (Doc. 108). After being granted an extension of time, Plaintiff filed his opposition brief to Defendants' motion on September 7, 2010, as well as his response to Defendants' SMF and an Appendix of his exhibits. (Docs. 115-117). On September 15, 2010, Defendants filed a reply brief. (Doc. 118).[6] On September 22, 2010, Plaintiff filed, without leave of Court, a sur reply brief to Defendants' motion. (Doc. 120). Plaintiff was in clear violation of Local Rule 7.7, M.D. Pa.

Defendants' Summary Judgment Motion is ripe for disposition.[7] As stated, both parties have submitted evidence, and the discovery deadline has expired.

---

[6]Defendants filed an identical reply brief *sans* the attached case law on September 17, 2010. (Doc. 119). It appears that since the case law attached to Doc. 118 was the same that was attached to Defendants' main brief, Doc. 109, Defendants re-filed their reply brief at Doc. 119 without the attachments. We also note that the Clerk of Court erroneously docketed Defendants' Doc. 118 reply brief as a "Supplement" to their Doc. 106 Motion. In any event, we refer to Defendants' Doc. 119 reply brief herein.

[7]We were assigned this case for pre-trial matters pursuant to 28 U.S.C. §636(b)(1).

## II. Allegations of Amended Complaint.[8]

In his Amended Complaint, Plaintiff claimed that the red light used between 10:00 P.M. and 6:00 A.M. near his cell at SCI-Coal Township was a violation of the Eighth Amendment prohibition against cruel and unusual punishment. With respect to this claim, Plaintiff averred that Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent Macmillian, Deputy Superintendent Verano, Health Care Administrator McCarty, Security Captain Miller, Major Mushinski and Major McAnnaney all failed to act or protect him from further injuries which were allegedly caused by the red-light, and that this failure to act amounted to deliberate indifference to his health and safety in violation of his Eighth Amendment rights. (Doc. 19, pp. 7-12).

Plaintiff averred that the conditions he allegedly suffered caused by the continual, nightly illumination of the red light, included "severe sleeping disorders, debilitating headaches, burning and dried eyes, terrible mood swings, lack of concentration, a confused state of memory, fatigue and eating disorders that caused a loss of weight." (Doc. 19, pp. 16-17; *Id.*, p. 5, ¶ 13.).

## III. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v.*

---

[8]We limit our discussion to Plaintiff's remaining Eighth Amendment claim.

*Doe*, 536 U.S. 273, 284-85 (2002).[9]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.; Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

## IV. Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate

---

[9]Plaintiff alleges in his amended pleading that the Defendants are employees of the PA DOC. (Doc. 19, pp. 2-3).  This is sufficient to show that Defendants are state agents.

only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

## V.  Discussion.

As stated, Plaintiff claims that the red light used at night between 10:00 P.M. and 6:00 A.M. near his cell at SCI-Coal Township violated the Eighth Amendment prohibition against cruel and

unusual punishment. Plaintiff avers that as a result of the constant red night light he suffered physical and mental ailments.

Initially, as Defendants note in their reply brief (Doc. 119, p. 3, n. 1), Plaintiff concedes in his opposition brief (Doc. 115, pp. 8-9) that, based on the undisputed evidence, Defendant McCarty lacks personal involvement with respect to his remaining Eighth Amendment claim. Thus, Plaintiff does not oppose Defendants' request for summary judgment with respect to Defendant McCarty. (*Id*.).

We agree that the undisputed evidence shows Defendant McCarty as the Health Care Administrator at SCI-Coal Township did not have any "first hand knowledge about the security night light system" at the prison. (Doc. 108, Att. 3). As stated, Plaintiff now concedes this fact.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Thus, we will recommend that Defendants' Summary Judgment Motion be granted with respect to Defendant McCarty, and that judgment be entered in favor of this Defendant and against Plaintiff Sims.

We now discuss the evidence as it pertains to Plaintiff's Eighth Amendment claim against the remaining seven (7) Defendants.

In *Williams v. Klem*, 2008 WL 4453100, *6-*7(M.D. Pa.), the Court stated:

> The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To establish an Eighth Amendment claim, Williams must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer,* 511 U.S. at 834. In reviewing this type of claim, the courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in *Wilson v. Seiter,* 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

> In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id.* at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. *See Farmer,* 511 U.S. at 837.

In *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 466 (M.D. Pa. 2010), the Court indicated that with respect to a conditions of confinement claim, "courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the 'totality of the circumstances' as critical to a finding of cruel and inhumane treatment." *Id.* The *Mitchell* Court also stated:

> In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321. As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842, 114 S.Ct. 1970.
> Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Rhodes,* 452 U.S. at 349 n. 14, 101 S.Ct. 2392). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22, 106 S.Ct. 1078 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id.* at 322, 106 S.Ct. 1078.

*Id.* at 466-67.

As discussed below, we find that there are no genuine issues of material fact regarding whether the red night light used at SCI-Coal Township violated the Eighth Amendment prohibition against cruel and unusual punishment. We find that the undisputed evidence demonstrates that Defendants' Summary Judgment Motion should be granted with respect to Plaintiff's Eighth

Amendment claim.

We agree with Defendants that the undisputed evidence shows that the security red light used at night at SCI-Coal Township during the relevant times of this case used only a five (5) watt bulb. (Doc. 119, pp. 2-3). Plaintiff offers no evidence to the contrary, and he admits that he did not know the wattage of the bulb used. We also agree with Defendants (*Id*.) that it is significant with respect to the cruel and unusual punishment claim that Plaintiff concedes that he does not know the wattage of the bulb used in the security night light. (Doc. 115, p. 7). Further, in his deposition, Plaintiff merely guessed as to the wattage of the bulb used in the night light. (Doc. 108, Att. 1, p. 18). Moreover, Defendants' undisputed evidence shows that the bulb in question was only a five watt bulb. In Michael Zachman's Declaration, Facility Maintenance Manager 3 at SCI-Coal Township since 2005, he avers as follows:

> 3. I am familiar with the security night light system at SCI-Coal Township. The security light is installed in all inmate cells, including those on general population blocks. The light consists of a five watt bulb, covered by a red plastic sleeve. The light bulb only gives off minimal light in the cells. I believe that there has been a security light, since the institution first opened in 1993.

> 4. There is a lighting fixture attached to the ceiling of the cell. There are two higher wattage bulbs contained in the ceiling fixture. The inmates can control the larger bulbs. The **five watt security light** is located in the center of the fixture and is turned on by staff during the night. The inmate cannot control the security light.

(Doc. 108, Att. 7, ¶'s 3.-4.) (Emphasis added).

In *Brown v. Martinez*, 2007 WL 2225842, *1 (M.D. Pa. 7-31-07), the Court was presented, in part, with the exact same issue Plaintiff Sims raises, namely, inmate Brown claimed "that he was exposed to constant illumination, cast by a security nightlight in his cell [at SCI-Camp Hill],

14

which was located directly above his head."  Inmate Brown, like Plaintiff Sims, claimed that the

nightlight violated the Eighth Amendment prohibition against cruel and unusual punishment.

The *Brown* Court stated:

> Requiring inmates to live in constant illumination, under certain circumstances, may rise to the level of an Eighth Amendment violation. *See Bacon v. Minner,* 2007 WL 1157138 (3d Cir. April 19, 2007) ( *citing Keenan v. Hall,* 83 F.3d 1083, 1090-91 (9 Cir.1996) (constant illumination so that inmate cannot discern day from night and which causes "grave sleeping problems" and other mental and psychological problems unconstitutional). However, continuous exposure to low wattage night time security lighting may be permissible based on legitimate penological interests, such as prison security concerns. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *see also Chavarria v. Stacks,* 102 Fed. Appx. 433, 436-37 (5th Cir.2004) ("policy of constant illumination [was] reasonably related to the legitimate penological interest of guard security"); *O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir.1987) (continuous lighting in holding cell not unreasonable given security concern); *King v. Frank,* 371 F.Supp.2d 977, 984-85 (W.D.Wisc.2005) (constant exposure to a 9 watt fluorescent light which allows prison officials to observe inmates at night did not violate Eighth Amendment standards); *Willis v. Terhune,* 404 F.Supp.2d 1226, 1230-31 (E.D.Cal.2005) (exposure to 24 hour 13 watt security bulb did not constitute cruel and unusual punishment in absence of evidence of "grave sleeping problems" or other harm).

*Id.* at *8.[10]

In *Brown*, the Plaintiff inmate alleged "that the 15 watt security night light prevented him

from adequately sleeping, and that this caused a variety of sleep-related psychological problems."

*Id.*  Plaintiff Sims alleges that the security night light at SCI-Coal Township caused him "severe

sleeping disorders, debilitating headaches, burning and dried eyes, terrible mood swings, lack of

concentration, a confused state of memory, fatigue and eating disorders that caused a loss of

weight." (Doc. 19, pp. 16-17).  As discussed, in our case, SCI-Coal Township only used a five (5)

---

[10]Defendants attached a copy of the *Brown* case to their main brief, Doc. 109-2.

watt security night light. Similar to the *Brown* case, most of our Defendants aver that they were not aware of any risk of harm to Plaintiff from the night security light. (Doc. 108, Atts. 2, 4, 5 and 6). Further, we do not find that Plaintiff has submitted any evidence that Defendants disregarded a substantial risk of serious harm to him "by failing to take reasonable measures to abate it or acted with deliberate indifference to [his] health or safety." *Mitchell v. Dodrill*, 696 F. Supp. 2d at 467-68. While Plaintiff argues that Defendants were aware the night light system caused him to suffer mental and physical conditions and he points to his many complaints he made to them, including his Grievances and Inmate Requests he submitted (Doc. 117), we concur with Defendants (Doc. 119, p. 5) that Plaintiff's complaints without any other evidence does not show that Defendants were deliberate indifference to his health or safety. As Defendants state, "just because the Plaintiff believes that the light caused him pain, does not mean that it is so." (*Id*.).

In his Declaration, Defendant Superintendent Varano avers as follows:

3.      I am familiar with the security night light system at SCI-Coal Township. The security light is present in both the Restricted Housing Unit ("RHU") and general population cells. I understand that the security light has been present for over 15 years and prior to my employment at SCI-Coal Township. The security light has been approved by the Department's Central Office and is consistent with Department policy.

4.      The light bulb only gives off minimal light in the cells. The inmate cannot control the security light. This light is only on at night. However, inmates can cover their eyes if they wish at night.

5.      The light is present for security reasons. It provides illumination for the Corrections Officers to identify inmates in their cells during security rounds and to view the cell's structure. Officers are to make sure that the inmates are in their cells and not harming themselves or others. The purpose of the security light is not to punish or harm the inmates. In addition, the light provides illumination for inmates to safely move about their cells to utilize the toilet facilities located inside their cells during the night.

6.    I am familiar with inmate Bobbie Sims, AM-7449.  He has complained to me about the security night light in his cell.  I explained to him that the light was on for security reasons.

8.    I am unaware of any risk of harm to the Plaintiff from the presence of the security light being on in his cell at night.  I know of no credible medical evidence that he has been harmed by the security light.  Given the minimal light given off by the night light and the security reasons for the light, I see no reason to cover or remove it.

(Doc. 108, Att. 6, ¶'s 3.-6. and 8.).

Defendants Kaskie, McMillan and Miller make essentially the same averments in their respective Declarations.  (*Id.*, Atts. 2, 4 and 5).  Defendant Miller also avers:

6.    Although Corrections Officers still have access to flashlights, the flashlights are only to be used as a backup at night.  The light also helps inmates see the commode at night.

7.    The inmates have alternatives if they are bothered by the security light.  They can cover their eyes if they wish at night.  They can also turn their backs to the light.

(*Id.*, Att. 5, ¶'s 6.-7.).

Notwithstanding Plaintiff's disagreements with Defendants' averments that the night light was used for security reasons, and despite Plaintiff's contention that the correction officers could have used flashlights instead (Doc. 116, p. 2), we find Defendants' Declarations, as opposed to an inmate's conclusions about proper prison security, are far more compelling as to the security needs at the prison.  As the *Mitchell* Court stated, prison security is "peculiarly a matter [for] the discretion of prison administrators."  696 F. Supp. 2d at 467. (Citation omitted).  The Court should not second guess decisions of prison officials which affect prison security.  *Id.*  Thus, we find that Plaintiff's exposure to the five-watt night security light at SCI-Coal Township was permissible based on the

undisputed legitimate security concerns of the Defendant prison officials.

The record also indicates that Plaintiff filed a Grievance on July 3, 2008, in which he complained, in part, about the "all night illuminating red-night light system" at the prison and alleged that it caused him "severe headaches, burning and dried eye's (sic), serious swing moods, deprivation of sleep and fatigue." (Doc. 108, Att. 3, Ex. A). In her July 14, 2008 Response to Plaintiff's Grievance, Defendant McCarty, Grievance Officer, stated as follows:

> According to your medical record, you were seen on 6/4/08 for complaints of your physical health being compromised due to mental stress. You claim that this was due to bright lights. You also claim this will affect your diabetes mellitus.
>
> This exam revealed no acute distress, and you were alert and oriented x 3. Your chart was reviewed and it was noted that your diabetes mellitus is under control: CNII-XII grossly intact. You were appropriately charged $5.00 for this visit, referred to psychology and advised of stress reduction techniques.
>
> You were seen by psychology on 6/11/08 and referred back to the counselor. You were previously on medications but they were discontinued on 5/8/08 because you complained they did not help.
>
> The psychiatrist saw you on 7/3/08 for complaints of being tired, fatigued, an moody and not being able to sleep. Remeron was ordered along with a return follow-up appointment with the psychiatrist.

(*Id.*).[11]

In his deposition, Plaintiff admitted that he was prescribed Remeron for his anger and depression he alleged to have suffered from the security night light. (Doc. 108, Att. 1, p. 26, NT

---

[11]Plaintiff also submits a copy of his July 3, 2008 Grievance and Defendant McCarty's Response as his part of his exhibits, Doc. 117, Ex. B. Plaintiff's exhibits also include other Grievances and Inmate Requests Plaintiff filed regarding the security night light system used at SCI-Coal Township.

46). Plaintiff also submitted portions of his medical records from April 2008 through June 2010 which reveal that he received regular medical care when he was confined at SCI-Coal Township for all of his physical and mental complaints, including his complaints that the red night light caused him mental stress and psychological suffering as well as insomnia. (Doc. 117, Ex. AA). Plaintiff was then seen at the psychological clinic. Plaintiff's records also indicate that his blood sugar was regularly monitored by the prison medical department. Plaintiff was re-prescribed Remeron in February 2010 and the prescription lasted until August 2010. Further, Plaintiff was regularly seen at the chronic clinic for acute care. Plaintiff's eye condition was also treated, and he was prescribed something for his dry eyes and glasses. We do not find any medical record which shows that Plaintiff's stated conditions were either caused by or exacerbated by the red night light.

In short, we do not find that Plaintiff's medical records show that any medical staff member found that the red light night directly caused Plaintiff any physical or mental conditions despite Plaintiff complaints that it did. Also, as discussed, it is not disputed that the light used was 5 watts and that the light bulb only gave off minimal light in the cells. Thus, while Plaintiff has presented evidence that he sought medical care for his physical and mental conditions he alleged were caused by the night light, we do not find any evidence that the prison medical staff found a link between Plaintiff's complaints and the night light. We also agree with Defendants (Doc. 119, p. 4) that Plaintiff's own conclusions *sans* any expert medical evidence is not sufficient to show that the night light caused him any physical and mental harm as he alleges.

Further, as Defendants point out (*Id*.), Plaintiff's attempt to distinguish the *Brown* case based on the fact that in *Brown*, the inmates were confined in the SMU, and Plaintiff was in the general

population, is unavailing, especially since we agree with Defendants that the security concerns are different with respect to SMU inmates and inmates in general population. Also, as stated, the bulb used in *Brown* was 15 watts, and the bulb used at SCI-Coal Township was only 5 watts.

Additionally, as in *Brown*, our Defendants aver that the night "light bulb gives off minimal light in the cells" and that "the light is present for security reasons." (Doc. 108, Att. 2, ¶'s 4.-5.). In fact, as Defendants indicate (Doc. 119, p. 7), Plaintiff has admitted ¶ 16. of their SMF which provides:

> 16.     The light bulb only gives off minimal light in the cells. The inmate cannot control the security light. However, inmates can cover their eyes if they wish at night. *Id*. at ¶ 4.

(Doc. 107, p. 4, ¶ 16. and Doc. 116, p. 2, 4th ¶).

With respect to the Affidavits Plaintiff submitted of other inmates (Doc. 117), we agree with Defendants (Doc. 119, pp. 7-8) that they do not controvert the undisputed facts in our case that night light bulb gave off minimal light in the cells and that the 5-watt light was present for security reasons.

Based on the instant record, and based on *Brown*, we find that the 5-watt security night light used at SCI-Coal Township during Plaintiff's confinement there provided only minimal illumination for legitimate security concerns, and that the conduct of the remaining seven Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Defendant Major Mushinski and Defendant Major McAnnaney, did not constitute cruel and unusual punishment in violation of the Eighth Amendment.

Thus, we will recommend that Defendants' Summary Judgment Motion be granted with respect to all eight (8) remaining Defendants, and that judgment be entered in favor of these Defendants and against Plaintiff Sims.

## VI. Recommendation

Based on the foregoing, it is respectfully recommended that Defendants' Summary Judgment Motion **(Doc. 106)** be granted with respect to all eight (8) remaining Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski and Defendant Major McAnnaney, and that judgment be entered in favor of these Defendants and against Plaintiff Sims with respect to his Eighth Amendment cruel and unusual punishment claim.



**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 31, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBIE LEE SIMS, JR., | : | CIVIL ACTION NO. **3:CV-09-0033** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOSEPH PIAZZA, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 31, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                    s/ Thomas M. Blewitt
_____        THOMAS M. BLEWITT
                                    United States Magistrate Judge


**Dated: January 31, 2011**