UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BOBBIE LEE SIMS, JR.,

Plaintiff

v.

JOSEPH PIAZZA, et al.,

Defendants.

Civil No. 3:09-CV-33

(Judge Kosik)

FILED
SCRANTON
AUG 1 8 2011
MARY E. D'ANDREA, CLERK
Per ________ DEPUTY CLERK

**MEMORANDUM**

Presently before us is the Report and Recommendation ("R&R") of Magistrate Judge Thomas M. Blewitt, filed on January 31, 2011, as well as Plaintiff's Objection to the R&R, Plaintiff's Motion to Appoint Counsel, Plaintiff's Motion for Leave to Compel Prison Officials to Produce his Accu Check Readings, Eye Examinations, and Current Medications of Plaintiff, Plaintiff's two (2) motions for Leave to file Sur Reply Briefs, and Defendants' responses. For the reasons that follow, we will adopt the R&R of the Magistrate Judge and deny the remaining motions. We have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and § 1343 because the claims in the Complaint raise federal questions.

**Procedural History**

On January 8, 2009, Plaintiff Bobbie Lee Sims, Jr., currently an inmate at the State Correctional Institution at Rockview, Pennsylvania (SCI-Rockview), filed, pro se, a civil rights Complaint pursuant to 42 U.S.C. § 1983, alleging violations of the First, Eighth, and Fourteenth Amendments seeking damages and injunctive relief. (Doc. 1)[1]. Plaintiff named nin Defendants, employees at SCI-Coal Township, in his original Complaint: Superintendent Joseph Piazza; Deputy Robert Macmillan; Deputy David Varano; Major David McAnnaney; Major Joseph Mushinski; Unit Manager Larry Kaskie; Security Captain Miller; Cindy Watson,

[1]The claims are based on incidents that occurred while Plaintiff was housed at SCI-Coal Township.

Chief Grievance Officer; and Kathryn McCarty, Health Care Administrator; as well as, Jeffery A. Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"). (Doc. 1, pp. 1-5).

Magistrate Judge Thomas M. Blewitt screened Plaintiff's original Complaint pursuant to the Prison Litigation Reform Act and issued a R&R on Februrary 4, 2009. (Doc. 7). Plaintiff filed no objections to this R&R.

Plaintiff filed an Amending and Incorporating Complaint. (Doc. 9). This document served as a continuation of the original Complaint where Plaintiff re-named Defendants Superintendent Varano and DOC Secretary Beard from the original Complaint and added Deputy Superintendent Ronda Ellet; Captain of Security Eddie Baumback; Security Lt. R. E. Long; Richard McMillian, Security Team; Kandis K. Dascani, Assistant to Superintendent and Grievance Officer. (Doc. 9, p. 2).

On March 23, 2009, we issued a Memorandum and Order adopting the February 4, 2009 R&R of Magistrate Judge Blewitt dismissing all claims against supervisory Defendant Beard, Defendant Watson, and Defendant Mushinski. (Doc. 13, p. 1). We also dismissed Plaintiff's First Amendment denial of access to courts claim, his § 1983 conspiracy claim, and his Eighth Amendment denial of proper medical care claim. (Id.). Plaintiff's requests for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damage, were stricken from the Complaint. (Id.). Further Plaintiff's claims for monetary damages against Defendants in their official capacities, as well as Plaintiff's state law claims, including claims for monetary damages under the Pennsylvania Constitution, were dismissed. (Id.). We then remanded the case to Magistrate Judge Blewitt for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim against the remaining Defendants, and for further proceedings regarding the "Amending and Incorporating Complaint."

Plaintiff filed a complete Amended Complaint on May 11, 2009[2]. (Doc. 19). Magistrate Judge Blewitt then issued a R&R regarding Plaintiff's Amended Complaint on June 9, 2009. (Doc. 23). The R&R was adopted by us on September 28, 2009 and resulted in the dismissal of Defendant Beard, Defendant Watson, and Defendant Dascani from the case; dismissed Plaintiff's Fourteenth Amendment due process claim, denial of medical treatment claim, retaliation claim, and his claim involving his termination from his Dietary Food Services Department position. We remanded the Eighth Amendment claim to Magistrate Judge Blewitt. (Doc. 34).

Plaintiff was permitted to proceed with his Eighth Amendment cruel and unusual punishment claim against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski, and Defendant Major McAnnaney. (Id.). On September 30, 2009, the Magistrate Judge directed the remaining Defendants be served with the Summons and Plaintiff's Amended Complaint. (Doc. 35). Defendants jointly filed an Answer to Plaintiff's Amended Complaint with Affirmative Defenses on December 29, 2009. (Doc. 45). Discovery then took place with a deadline of June 29, 2010. (Doc. 60).

On July 28, 2010, Defendants jointly filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 based on their contention that the security light used at SCI-Coal Township was only a five-watt bulb and gave off minimal light, and as such did not constitute cruel and unusual punishment under the Eighth Amendment. (Doc. 106). Defendants filed a support brief with attached case law, a Statement of Material Facts, and an Appendix of Exhibits in support of their motion. (Docs. 109, 107, 108). Plaintiff filed an opposition brief to Defendants' motion, a response to Defendants' Statement of Material Facts and an Appendix of his exhibits, a reply brief, and a sur reply brief to Defendants' motion. (Docs. 115, 116, 117, 118, 120). On January 31, 2011, an R&R was filed by Magistrate Judge Blewitt

---

[2]Plaintiff filed his Amended Complaint pursuant to an Order issued on April 1, 2009 by Magistrate Judge Blewitt allowing Plaintiff to file a complete Amended Complaint based on his filing of the "Amended and Incorporating Complaint."

based on the Motion for Summary Judgment filed by the Defendants. (Doc. 125).

Plaintiff filed his objections to the January R&R on May 9, 2011. (Doc. 132). Plaintiff further filed various motions throughout May and June. (Docs. 128, 129, 136, 144, 145)[3]. Plaintiff's two motions for leave to file sur reply briefs were considered by the Court as reply briefs to Defendants' Brief in Opposition to Plaintiff's Objections to the R&R and Defendants' Brief in Opposition to Plaintiff's Motion for Leave to Compel Prison Officials to Produce Records. (Docs. 144 and 145). The Magistrate Judge's January R&R and Plaintiff's and Defendants' various filings are presently before us and ripe for adjudication. For the reasons that follow, we adopt the January R&R.

**Factual Background**

We summarize the factual allegations of Plaintiff's Amended complaint as follows[4]:

On February 26, 2008, Plaintiff was transferred to the SCI-Coal Township's Restricted Housing Unit ("RHU") from another facility until space opened up for him in general prison housing. After his transfer to SCI-Coal Township, Plaintiff alleges that he began to experience sleeping problems, which he attributes to the nighttime security system in place at the prison. Although the main lights in the RHU are turned off at 10:00 PM each evening, a red light system illuminates inmates' cells between 10:00 PM and 6:00 AM to ensure that inmates are in their cells during the night (the "red light system"). The prison also uses the red light system in the general population housing. The red light system remained in use in

---

[3]Motion to Appoint Counsel; Motion for Extension of Time to File Supplemental Pleadings; Motion for Leave to Compel Prison Officials to Produce his Accu Check Readings, Eye Examination and Current Medications of Plaintiff Directly to the Court; Motion for Leave to File a Sur Reply Brief to Defendant's Brief in Opposition to Plaintiff's Objections to Report and Recommendation; Motion for Leave to File a Sur Reply Brief to Defendant's Brief in Opposition to Plaintiff's Motion for Leave to Compel Prison Officials to Produce Records.

[4]We have limited the facts to those relating to the red light system since that is what is before this Court. Plaintiff's facts and arguments concerning claims that have previously been dismissed have not been discussed, despite Plaintiff's continual reiteration of those facts and arguments.

Plaintiff's cell despite his concerns, which he raised with Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano, as well as his psychologist and psychiatrist.

Plaintiff alleges he suffered from a variety of symptoms, including sleep disorder, headaches, dry, burning eyes, mood swings, an inability to concentrate, confused memory, and exacerbation and worsening control of his diabetes and high blood pressure, both of which are chronic conditions. In addition to trying to physically block the red light by putting towels and socks over his head, Plaintiff made numerous attempts to resolve the problem informally with prison staff. None of these attempted solutions were successful.

On April 21, 2008, Plaintiff filed the first of several formal grievances through the prison's grievance system (first grievance). In this grievance, Plaintiff detailed the use of the red light system and its adverse effect on him. Plaintiff exhausted the appeals process for this grievance, which was ultimately denied. In July of 2008, a doctor evaluated Plaintiff and referred him to an optometrist. The optometrist found evidence of damage to Plaintiff's eyes and prescribed dark glasses and lubricating eye drops to alleviate Plaintiff's light sensitivity and dry eyes.

On July 3, 2008, Plaintiff filed a grievance against Defendant McCarty to address his medical problems (second grievance), which he alleged were exacerbated by the red light system. Plaintiff exhausted the appeals process for this grievance on August 6, 2008, without meaningful resolution. Plaintiff's written and verbal communications with Defendant Beard, the Secretary of the DOC, were similarly unfruitful.

On July 31, 2008, Plaintiff filed another grievance regarding the red light system (third grievance). Plaintiff alleges that Defendant Dascani refused to process this grievance or address any of Plaintiff's requests for resolution on the grounds that Plaintiff had already filed an unsuccessful grievance regarding the red light system.

## Standard of Review

### I. Section 1983 Standard

In a § 1983 civil rights action, the Plaintiff must prove the following two essential

elements; (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parrat v. Taylor,* 451 U.S. 527 (1981); *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993). Section 1983 does not create substantive rights; it "merely provides a mechanism for enforcing individual rights 'secured' elsewhere... 'One cannot go into court and claim a violation of § 1983 - for § 1983 by itself does not protect anyone against anything.'" *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284-85 (2002) *quoting Chapman v. Houston Welfare Rights Org.,* 451 U.S. 287, 294 (1981).

In order for § 1983 liability to be appropriate, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) *quoting Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge or acquiescence," and must be pled with particularity. *Id., see also Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980) (holding civil rights complaint adequate where it states time, place, conduct and persons responsible); *Hall v. Pa. State Police,* 570 F.2d 86, 89 (3d Cir. 1978) (holding a plaintiff's mere assertions that his rights have been violated "without facts upon which to assess the substantiality of the claim" were insufficient to support a § 1983 action).

**II. Motion for Summary Judgment Standard**

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. The court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *Hugh v. Butler*

*County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Initially the moving party must show the absence of a genuine issue concerning any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257; *see Celotex Corp.*, 477 U.S. at 323-24. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh*, 418 F.3d at 267 *citing Anderson*, 477 U.S. at 251. Neither unsworn statements of counsel in memoranda submitted to the court nor unsupported conclusory allegations in the pleadings will dispute a material fact. *See* Fed. R. Civ. P. 56(e); *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).

If the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then no genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

**Discussion**

**I. Plaintiff's Objections**

When objection are filed to a R&R of a magistrate judge, we review de novo the portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(c); *see Sample v. Diecks*, 855 F.2d 1099, 116 n.3 (3d Cir. 1989). Written objections to a R&R must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. Pa. Local R. 72.3. We may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); M.D. Pa. Local R. 72.3. Although our review is de novo, we are permitted to rely upon the magistrate judge's proposed recommendations to the extent that we, in the exercise of sound discretion, deem proper. *See United States v. Raddatz*,

447 U.S. 667, 676 (1980); *see also Goney v. Clark,* 749 F.2d 5, 7 (3d Cir. 1984).

We read Plaintiff's filings liberally because of his pro se status and will address the recommendation of the January R&R and Plaintiff's contentions *seriatim*. We note as a preliminary matter that Plaintiff's Objections span some thirty-eight pages. Plaintiff's Objections reiterate the allegations of the Amended Complaint and cite case law to support his claims. Plaintiff also attempts to raise numerous matters extraneous to the issue before the court that are clearly not relevant to the matter at hand.[5]

Plaintiff filed motions to compel prison officials to produce his medical records and to file supplemental pleadings. (Docs. 130, 131, 136, 137, and 145; *see* Doc. 132). To allow either of these motions at this time would be prejudicial to the Defendants since both the discovery and pleadings periods are closed. The discovery deadline was June 29, 2010 (Doc. 60) and Plaintiff filed his motion to compel medical records on May 18, 2011 (Doc. 136). Considering the nearly eleven month lapse between the discovery deadline and the filing of the motions to compel, as well as the uncertainty as to the relevance of these documents, the Plaintiff's motions to compel production of these documents will be denied as untimely. Plaintiff's Motion to File Supplemental Pleadings also cannot be granted. The issue before this court is an Eighth Amendment cruel and unusual punishment claim that was originally filed on January 8, 2009. (Doc. 1). Plaintiff's motion regarding supplemental pleadings was filed May 9, 2011 alleging retaliation that occurred on October 19, 2010. (Docs. 129, 130). The retaliation claim is unrelated to the Eighth Amendment cruel and unusual claim and would have to be raised in a separate action.

**II. Motion for Summary Judgment: Red Light System Claim**

Plaintiff's only claim before us centers on the prison's use of the red light system.

---

[5]This includes characterizations of the Magistrate Judge; another attempt to reinstate Jeffrey Beard (a matter previously settled by the court); another motion to appoint counsel (already addressed by Magistrate Judge Blewitt on two other occasions and without a change in the circumstance of the case); serving additional interrogatories on Defendants; a Motion for Reconsideration/Objection; and issues with receiving court documents. (*See* Doc. 132).

Plaintiff claims that the red light, located in his cell[6], was used at night between 10:00 PM and 6:00 AM when he was at SCI-Coal Township. Plaintiff alleges that this system, used continuously throughout the night, violated his Eighth Amendment right against cruel and unusual punishment because it caused him serious physical and psychological harm, as well as exacerbating his diabetes and high blood pressure. In the January R&R, the Magistrate Judge recommended that Defendants' Summary Judgment Motion (Doc. 106) be granted for Defendant McCarty based on lack of personal involvement and Plaintiff's concession of such; and, that the motion be granted, based on the record before us, for the seven (7) remaining Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Major Mushinski and Major McAnnaney with respect to his Eighth Amendment cruel and unusual punishment claim. (Doc. 125). We agree and will adopt the Magistrate Judge's recommendation with regard to Defendant McCarty and with regard to the remaining Defendants.

Defendants note in their reply brief (Doc. 119, p. 3, n. 1), and Plaintiff concedes in his opposition brief (Doc. 115, pp. 8-9) that, based on the undisputed evidence, Defendant McCarty lacks personal involvement with respect to Plaintiff's remaining Eighth Amendment claim. Thus, Plaintiff does not oppose Defendants' request for summary judgment with respect to Defendant McCarty. (*Id.*).

As we indicated earlier, in order for § 1983 liability to be appropriate, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho,* 423 F.3d at 353 *quoting Rode,* 845 F.2d at 1207. We agree that the undisputed evidence shows Defendant McCarty as the Health Care Administrator at SCI-Coal Township did not have any "first hand knowledge about the security night light system" at the prison. (Doc. 108, Att. 3). As stated,

---

[6]Magistrate Judge Blewitt referenced the red light being "near [Plaintiff's] cell," when the light is actually located in Plaintiff's cell. Plaintiff has pointed out this mistake in his Objections and we take note of it and recognize that the red light is located within Plaintiff's cell.

Plaintiff now concedes this fact. We will therefore grant the motion for summary judgment with respect to Defendant McCarty.

We now turn our discussion to the evidence as it pertains to Plaintiff's Eighth Amendment claim against the remaining seven Defendants.

Although "the Constitution 'does not mandate comfortable prisons,'...neither does it permit inhumane ones," *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) *quoting Rhodes v. Chapman,* 452 U.S. 337, 349 (1981), and "the treatment a prisoner receives in prison and the condition under which he is confined are subject to scrutiny under the Eighth Amendment, *id. quoting Helling v. McKinney,* 509 U.S. 25, 31 (1993). At minimum, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id. quoting Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984). The Eighth Amendment also "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain.'" *Rhodes,* 452 U.S. at 346 *quoting Gregg v. Georgia,* 428 U.S. 153, 173 (1976). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id. citing Gregg,* 428 U.S. at 183; *Estelle v. Gamble,* 429 U.S. 97, 103 (1976).

Not all harms violate the Eighth Amendment, however. *See Farmer,* 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,'... [it] must result in the denial of 'the minimal civilized measure of life's necessitites.'" *Id.* (internal citations omitted). Proving that one has been deprived of the minimal civilized measures of life's necessities requires proof that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. *Griffin v. Vaugh,* 112 F.3d 703, 309 (3d Cir. 1997).

Second, "[the] prison official must have a 'sufficiently culpable state of mind.'" *Farmer,* 511 U.S. at 834 *quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "In prison-condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "[D]eliberate indifference entails something more than mere negligence...it is

satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result." *Id.* "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measure to abate it." *Id.* at 847.

In *Brown v. Martinez,* 2007 U.S. Dist. LEXIS 55350 (M.D. Pa.., 7-31-07), the court was presented with an excessive light/sleep deprivation claim. The court stated:

> Requiring inmates to live in constant illumination, under certain circumstances, may rise to the level of an Eighth Amendment violation. *See Bacon v. Minner,* 229 Fed. Appx. 96, 2007 U.S. App. LEXIS 9151, 2007 WL 1157138 (3d Cir. April 19, 2007)(*citing Keenan v. Hall,* 83 F.3d 1083, 1090-91 (9th Cir. 1996) (constant illumination so that inmate cannot discern day from night and which causes "grave sleeping problems" and other mental and psychological problems unconstitutional). However, continuous exposure to low wattage night time security lighting may be permissible based on legitimate penological interests, such as prison security concerns. *Turner v. Safley,* 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *see also Chavarria v. Stacks,* 102 Fed. Appx. 433, 436-37 (5th Cir. 2004)("policy of constant illumination [was] reasonably related to the legitimate penological interest of guard [*27] security"); *O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir. 1987)(continuous lighting in holding cell not unreasonable given security concern); *King v. Frank,* 371 F. Supp. 2d 977, 984-85 (W.D. Wisc. 2005)(constant exposure to a 9 watt fluorescent light which allows prison officials to observe inmates at night did not violate Eighth Amendment standards); *Willis v. Terhune,* 404 F. Supp.2d 1226, 1230-31 (E.D. Cal. 2005)(exposure to 24 hour 13 watt security bulb did not constitute cruel and unusual punishment in absence of evidence of "grave sleeping problems" or other harm).

*Id. at *8.*

Plaintiff alleges that the red light security system at SCI-Coal Township caused him "severe sleeping disorders, debilitating headaches, burning and dried eyes, terrible mood swings, lack of concentration, a confused state of memory, fatigue and eating disorders that caused a loss of weight." (Doc. 19, pp. 16-17). Defendants' state that the security light in question is a five (5) watt bulb. (Doc. 119, pp. 2-3; Doc 109, Att. 7, P 4)[7]. Plaintiff admits

---

[7]Plaintiff correctly points out, and Defendants admit, that the photograph of the cell attached to Mr. Zechman's Declaration is not from a general population cell, as stated by Mr. Zechman, but is instead a photograph of a cell from the Restricted Housing Unit (RHU). Defendants state that they did not realize the mistake until after the Motion for Summary

that he does not know the wattage of the bulb used, but instead seems to argue not with the wattage of the light itself, but with the unit of measurement used in describing the light's illumination[8]. (Doc. 13, pp. 21-23). We agree with the Magistrate Judge's finding that the light in question was only a five (5) watt light bulb and that Plaintiff offers no evidence to the contrary. This amounts to only minimal illumination, especially when compared with other cases that have found no constitutional violation with regards to night lights. *Brown,* 2007 U.S. Dist. LEXIS at *26 ("continuous exposure to low wattage (15-watts) security night time security lighting may be permissible based on legitimate penological interests, such as prison security concerns"); *Willis,* 404 F.Supp. 2d at 1230-32 (exposure to 24 hour 13 watt security bulb did not constitute cruel and unusual punishment in absence of evidence of "grave sleeping problems" or other harm); *King,* 371 F. Supp 2d at 984-85 (constant exposure to a 9 watt fluorescent light which allows prison officials to observe inmates at night did not violate Eighth Amendment standards). We note that the cases which have found all night lighting to be a possible constitutional deprivation are concerned with much higher lighting wattages,[9] *See, e.g. Shepherd v. Ault,* 982 F. Supp. 643 (N.D. Iowa, 1997) (concerning cells lighted twenty-four hours a day by a sixty-watt light bulb), and the illumination was such that it

---

Judgment was filed and that there was no intentional deception of the court. Defendants further went on to state that the light is the same in both the general population and RHU cells so it would be accurate as to either. (Docs. 108, Att. 7, 132 and 134). Since Defendants admit their mistake and claim no intentional deception and the Plaintiff does not dispute that the lighting is the same in a general population cell and RHU cell, we will consider the photograph for as presumed.

[8]The Defendants refer to the light's wattage. Plaintiff points to a report filed by Mr. Ward Duel that states a minimum lighting standard set forth by the ACA of 20 foot candles, a minimum light standard which bears no relation to the case at hand. (Doc. 133, Ex. 11).

[9]Plaintiff argued these cases in his Objections. In addition to being distinguishable, they were also outside our Circuit.

rendered the inmate incapable of discerning night from day and resulted in grave sleeping problems and other mental and psychological problems[10]. *Keenan,* 83 F. 3d at 1091.

The Magistrate Judge found that the night light in question serves a legitimate penological interest, namely safety and security. (Doc. 125, Doc. 134). Plaintiff disagrees and contends that the correctional facility should be using flashlights to meet the safety and security needs of the prison, not the red light system[11]. (Doc. 132, p. 31). "[A] prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Mitchell v. Dodrill,* 696 F. Supp. 2d 454, 467 (M.D. Pa., 2010) *quoting Whitley v. Albers,* 475 U.S. 312, 321 (1986). "Prison officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id. quoting Bell v. Wolfish,* 441 U.S. 520, 547 (1979). In their Declarations, Defendants state that the "security light has been approved by the Department's Central Office and is consistent with Departmental policy," (Doc. 108, Att. 2, ¶3), and that it provides illumination for the officers to identify inmates in the cells, to view the structure of the cell, and to make sure inmates are not harming themselves or others (Doc. 108, Att 2, ¶5, Att.4, ¶5; Att. 5, ¶5; Att. 6, ¶5). We agree with the Magistrate Judge that the prison officials Declarations about the security needs of the prison are far more compelling than the Plaintiff's conclusions. (Doc. 125, p. 17). Since prison officials are given broad deference in executing policies and practices needed to maintain

---

[10]In the *Keenan* case, the plaintiff alleged that "large florescent lights directly in front of and behind his cell shone into his cell 24 hours a day, so that his cell was 'constantly illuminated...'" *Keenan*, 83 F. 3d at 1091.

[11]Plaintiff attached sworn affidavits of prisoners from SCI-Rockview all stating that these prisoners have never stayed at a prison where a security system, such as the red light system, was used. (Doc. 133). SCI-Rockview is not SCI-Coal Township - different prisons are run by different administrations and have different needs and policies - as such, a prison that finds a particular security measure necessary has no bearing on a different prison using or not using that particular security measure.

institutional security, we must agree that the low-wattage red light security system at SCI-Coal Township serves a legitimate penological interest.

The Magistrate Judge also found that, despite Plaintiff's assertions to the contrary, Plaintiff's medical records did not show that any medical staff member found the red light system caused Plaintiff any physical or mental conditions. (Doc. 125, p. 19). Plaintiff has only offered his own conclusions to establish that the red light system has caused him physical and mental harm. As the Magistrate Judge points out, the medical records show that Plaintiff received regular medical care when he was confined at SCI-Coal Township for all of his physical and mental complaints, including his complaints that the red light system caused him mental stress and psychological suffering as well as insomnia. (Doc. 117, Ex. AA). Plaintiff was then seen at the psychological clinic. Plaintiff's records also indicate that his blood sugar was regularly monitored by the prison medical department. Plaintiff was also regularly seen at the chronic clinic for acute care. Plaintiff's eye condition was also treated, and he was prescribed medications for his dry eyes and glasses. Moreover, there are no medical records showing that Plaintiff's stated conditions were either caused by or exacerbated by the red light system. Accordingly, we must agree with the Magistrate Judge that there is no evidence of record showing harm to the Plaintiff as a result fo the red light system.

In the January R&R, the Magistrate Judge also found that the Defendants did not disregard a substantial risk of serious bodily harm by failing to take reasonable measures to abate the condition and were not deliberately indifferent to Plaintiff's health or safety. (Doc. 125, p. 16). Defendants aver that they were not aware of any risk or harm to Plaintiff from the red light system. (Doc. 108, Att 2, ¶7; Att. 3, ¶6; Att.4, ¶7; Att. 5, ¶9; Att. 6, ¶8). As indicated above, the lack of credible medical evidence showing harm to Plaintiff combined with the minimal lumination given off by the red light system, and the legitimate penological interest, establish that Defendants were not deliberately indifferent to Plaintiff. The record

indicates that the Defendants discussed the issue with Plaintiff, offered him possible solutions, and performed medical examinations to address the health issues Plaintiff was suffering[12].

**CONCLUSION**

We find that the red light system only gave off minimal illumination due to the five-watt bulb. Moreover, it served the penological interest of security and safety. There is no medical evidence showing that Plaintiff was physically or mentally harmed by the red light system and no evidence showing that Defendants were deliberately indifferent to Plaintiff. For the foregoing reasons, we will adopt the January R&R of the Magistrate Judge and grant Defendants' Motion for Summary Judgment.

An appropriate order follows.

---

[12]Defendant McCarty, in response to a grievance filed by the Plaintiff, noted that Plaintiff's medical records showed he received an exam on 6/4/08 for mental stress Plaintiff claimed was brought on by bright lights. The exam did not reveal any acute distress, showed that he was alert and oriented x3, and that his diabetes mellitus was under control. Plaintiff was also seen by psychology on 6/11/08, referred to a counselor and was put on medication that was eventually discontinued on 5/8/08. Plaintiff again saw a psychiatrist on 7/3/08 and was put on a different medication. (Doc 108, Att. 3, Ex. A).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBIE LEE SIMS, JR., Plaintiff | : | Civil No. 3:09-CV-33 |
| v. | : | (Judge Kosik) |
| JOSEPH PIAZZA, et al., Defendants. | : | |

**ORDER**

AND NOW, this 19th day of August, 2011, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of Magistrate Judge Thomas M. Blewitt, dated January 31, 2010 (Doc. 125), is **ADOPTED;**
2. Plaintiff's Objections (Doc. 132) are **OVERRULED**;
3. Defendants' Motion for Summary Judgment filed by Defendants McCarty, Piazza, McMillian, Varano, McAnnaney, Mushinski, Kaskie, and Miller (Doc. 106) is **GRANTED;**
4. Judgment is hereby entered in favor of the Defendants and against Plaintiff;
5. Plaintiff's Motion to Appoint Counsel (Doc. 128) is **DENIED**;
6. Plaintiff's Motion for Extension of Time to File Supplemental Pleadings (Doc. 129) is **DENIED;**
7. Plaintiff's Motion for Leave to Compel Prison Officials to Produce his Accu Check Readings, Eye Examinations, and Current Medication of Plaintiff Directly to this Court (Doc. 136) is **DENIED;**
8. Plaintiff's Motion for Leave to File a Sur Reply Brief (Doc. 144) is **DENIED;**
9. Plaintiff's Motion for Leave to File a Sur Reply Brief (Doc. 145) is **DENIED;**
10. The Clerk of Court is directed to **CLOSE** this case and to **FORWARD** a copy of this Memorandum and Order to the Magistrate Judge.

Edwin M. Kosik
United States District Judge