IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBIE LEE SIMS, JR., | : | CIVIL ACTION NO. **3:CV-09-0033** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOSEPH PIAZZA, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Background.

On January 8, 2009, Plaintiff, Bobbie Lee Sims, Jr., formerly an inmate at the State
Correctional Institution at Coal Township ("SCI-Coal Township"), Coal Township, Pennsylvania,
originally filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1).  Plaintiff
properly filed his action in the United States District Court for the Middle District of Pennsylvania
since he was an inmate in the Middle District of Pennsylvania, his claims related to his confinement
in the Middle District of Pennsylvania, and all original Defendants except two (Beard and Watson)
were employed at the prison located in the Middle District of Pennsylvania.  Plaintiff also filed an
*in forma pauperis* Motion.  (Doc. 2).[1]

Plaintiff named the following ten (10) Defendants in his original Complaint: Superintendent
Joseph Piazza; Deputy Robert Macmillian; Deputy David Varano; Major David McAnnaney; Major

---

[1]Plaintiff arrived at SCI-Coal Township on February 26, 2008. Plaintiff was transferred
from SCI-Coal Township on October 19, 2010, and he is currently confined at SCI-Rockview.
(Doc. 121).  Plaintiff's remaining First Amendment retaliation claim relates only to his
confinement at SCI-Coal Township.

Joseph Mushinski; Unit Manager Larry Kaskie; Security Captain Miller; Jeffery A. Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"); Cindy Watson, Chief Grievance Officer; and Kathryn McCarty, Health Care Administrator.  (Doc. 1, pp. 1-5).

On February 4, 2009, we screened Plaintiff's original Complaint pursuant to the Prison Litigation Reform Act ("PLRA") and issued a Report and Recommendation. ("R&R"). We recommended, in pertinent part, as follows:

> this case be dismissed as to all claims against supervisory Defendant Beard pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  It is also recommended that Plaintiff's Eighth Amendment cruel and unusual punishment claim proceed as against (7) Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Health Care Administrator McCarty, and Defendant Major McAnnaney.  Further, we recommend that Plaintiff's Fourteenth Amendment due process claim be dismissed entirely from this case, and  that Defendant Watson and Defendant Mushinski be dismissed from this case.  We recommend that Plaintiff's First Amendment denial of access to courts claim, his §1983 conspiracy claim and his Eighth Amendment denial of proper medical care claim be dismissed entirely from this case.
>
> It is additionally recommended that Plaintiff's relief request for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damages, be stricken from the Complaint.  It is recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.  Moreover, it is recommended that Plaintiff's state law claims be dismissed and that any claims for monetary damages under the Pennsylvania Constitution be dismissed.
>
> Finally, it is recommended that this case be remanded to the undersigned for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Health Care Administrator McCarty, and Defendant Major McAnnaney.

(Doc. 7).

On February 23, 2009, while our Report and Recommendation (Doc. 7) was pending before the Court, Plaintiff filed an "Amending and Incorporating Complaint." (Doc. 9). Plaintiff's "Amending and Incorporating Complaint" was not a complete Complaint. It had a cover page and a list of Defendants to be added, and started, in substance, on page 18 and ended on page 28. This document was merely a continuation of Plaintiff's original Complaint, which ended on page 17. In his "Amending and Incorporating Complaint," Plaintiff seemingly re-named ten Defendants from his original Complaint, namely, DOC Secretary Beard[2], Superintendent Varano and former Superintendent Joseph Piazza; Deputy Superintendent Robert Macmillian; Major David McAnnaney and Major Joseph Mushinski; Unit Manager Larry Kaskie; Intelligence Captain Michael Miller; Health Care Administrator Kathryn McCarty, and Chief Grievance Officer Cindy Watson. The Amending and Incorporating Complaint also added six new Defendants to those listed in his original Complaint, namely: Ronda Ellett, Deputy Superintendent; Eddie Baumback, Captain of Security; R. E. Long, Security Lt.; Richard McMillian, Security Team; and Kandis K. Dascani, Assistant to Superintendent and Grievance Coordinator. (Doc. 9, p. 2).

Plaintiff did not file any Objections to our Doc. 7 R&R.

On March 23, 2009, the District Court issued a Memorandum and Order (Docs. 12 and 13), in which it directed as follows:

> (1) The Report and Recommendation of Magistrate Judge Thomas M. Blewitt dated February 4, 2009 (Document 7) is ADOPTED.

---

[2]Defendant Beard was dismissed entirely from this case by the District Court in its March 23, 2009 Order. (Doc. 13).

(2) The above-captioned action is dismissed as to all claims against supervisory Defendant Beard pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); Plaintiff's Fourteenth Amendment due process claim is dismissed entirely from this case, and Defendant Watson and Defendant Mushinski are dismissed from this case; Plaintiff's First Amendment denial of access to courts claim, his § 1983 conspiracy claim and his Eighth Amendment denial of proper medical care claim are dismissed entirely from this case; Plaintiff's relief request for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damages, are stricken from the Compliant; Plaintiff's claims for monetary damages against Defendants in their official capacities are dismissed; and Plaintiff's state law claims are dismissed and any claims for monetary damages under the Pennsylvania Constitution are dismissed.

(3) The above-captioned action is REMANDED to the Magistrate Judge for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Health Care Administrator McCarty, and Defendant Major McAnnaney, and for further proceedings regarding the "Amending and Incorporating Complaint."

(Doc. 13, pp. 1-2).

On April 1, 2009, the undersigned Magistrate Judge issued an Order allowing the Plaintiff to file a complete Amended Complaint. (Doc. 14). Plaintiff filed his Amended Complaint on May 11, 2009. (Doc. 19).

Plaintiff correctly stated in his amended pleading that this Court has jurisdiction over this § 1983 civil rights case pursuant to 28 U.S.C. § 1331 and § 1343. (Doc. 19, p. 1). We then screened the Plaintiff's Amended Complaint as required by the PLRA.[3]

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). The Prison Litigation Reform Act of 1995 (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

On June 9, 2009, we issued an R&R regarding Plaintiff's Amended Complaint and we recommended as follows:

>   that this case be dismissed as to all claims against supervisory Defendant Beard pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), that Defendant Watson be dismissed since no specific claim is made against her. It is also recommended that Plaintiff's Eighth Amendment cruel and unusual punishment claim proceed as against (8) Defendants, namely, Unit Manager Kaskie, former Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Major Mushinski, and Major McAnnaney. Moreover, it is recommended that all of Plaintiff's Fourteenth Amendment due process claims be dismissed entirely from this case. Additionally, it is recommended that Plaintiff's First Amendment denial of access to courts claim and his Eighth Amendment denial of proper medical care claim be dismissed entirely from this case. **It is further recommended that all Plaintiff's First Amendment retaliation claims be dismissed from this case**.

>   It is additionally recommended that Plaintiff's relief request for specific amounts of monetary damages from each Defendant, both in compensatory damages and in punitive damages, be stricken from his Amended Complaint. (Doc. 19, pp. 25-26). It is recommended that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.[4] Moreover, it is recommended that Plaintiff's state tort law claims be dismissed.

>   Finally, it is recommended that this case be remanded to the undersigned for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski, and Defendant Major McAnnaney.

(Doc. 23)(Emphasis added).

---

[4]Plaintiff stated that he sued all Defendants in both their individual and official capacities (Doc. 19, p. 25). However, the Court already dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities from Plaintiff 's original Complaint. (Doc. 13). The Court again dismissed from Plaintiff 's Amended Complaint Plaintiff's claims for monetary damages against all Defendants in their official capacities. (Doc. 34). In any event, Plaintiff cannot recover monetary damages against the state actor Defendants in their official capacities. *See Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir.) (Non-Precedential).

On September 28, 2009, the District Court issued a Memorandum and Order (Docs. 12 and 13), and adopted our June 2009 R&R. The Court directed as follows:

1.    The Report and Recommendation of Magistrate Judge Thomas M. Blewitt dated June 9, 2009 (Doc. 23) is **ADOPTED**.

2.    We **DISMISS** in part the above-captioned action as follows:

    a.    We dismiss all claims against Defendants Beard and Watson pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);
    b.    We dismiss Counts II, III, IV, and V; and
    c.    We dismiss Plaintiff's claims for monetary damages against all Defendants in their official capacities.

3.    We strike from the Amended Complaint Plaintiff's request for specific amounts of monetary damages from each Defendant, as to both compensatory and punitive damages.

4.    We **REMAND** the above-captioned action to the Magistrate Judge for further proceedings with respect to Plaintiff's Eighth Amendment cruel and unusual punishment claim as against Defendants Kaskie, McAnnaney, McCarty, McMillian, Miller, Mushinski, Piazza, and Varano (Count I).

(Doc. 34, p. 22).[5]

Thus, Plaintiff was permitted to proceed only with respect to his Eighth Amendment cruel and unusual punishment claim, regarding the security night light at SCI-Coal Township, as against Defendants Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian,

---

[5] *See Sims v. Piazza* 2009 WL 3147800 (M.D. Pa. 9-28-09). We note that the Court dismissed, in part, Plaintiff's First Amendment retaliation claim relating to his termination from employment in the kitchen at SCI-Coal Township in early 2009. (*See* Doc. 19, Count V, ¶'s 127-146, pp. 22-24). Plaintiff's First Amendment retaliation claim is currently the only remaining claim in this case.

Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski, and Defendant Major McAnnaney. (*Id*.).

On September 30, 2010, we directed that the remaining eight (8) Defendants be served with the Summons and Plaintiff's Amended Complaint. (Doc. 35). Defendants were served and after being granted more time, jointly filed an Answer to Plaintiff's Amended Complaint with Affirmative Defenses, on December 29, 2010. (Doc. 45).

Discovery then ensued, including the taking of Plaintiff's deposition. (*See* Doc. 108, Att. 1). The discovery deadline expired on June 29, 2010. (Doc. 60).

On July 28, 2010, Defendants jointly filed, through counsel, a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 based on their contention that the security night light used at SCI-Coal Township was only a five watt bulb and gave off minimal light, and as such did not constitute cruel and unusual punishment under the Eighth Amendment. (Doc. 106). Defendants also simultaneously filed their support brief with attached case law, as well as their Statement of Material Facts ("SMF"), as required by Local Rule 56.1, M.D. Pa. (Docs. 109 and 107). Defendants also filed an Appendix of exhibits in support of their motion. (Doc. 108). After being granted an extension of time, Plaintiff filed his opposition brief to Defendants' motion on September 7, 2010, as well as his response to Defendants' SMF and an Appendix of his exhibits. (Docs. 115-117). On September 15, 2010, Defendants filed a reply brief. (Doc. 118).[6] On September 22, 2010, Plaintiff filed, without required leave of Court, a sur reply brief to Defendants' motion. (Doc. 120).

---

[6]Defendants filed an identical reply brief *sans* the attached case law on September 17, 2010. (Doc. 119).

Plaintiff was in clear violation of Local Rule 7.7, M.D. Pa.

Defendants' Summary Judgment Motion was ripe for disposition.[7] As stated, both parties submitted evidence, and the discovery deadline has expired.

On January 31, 2011, we issued an R&R and recommended that Defendants' Summary Judgment Motion (Doc. 106) be granted with respect to all eight (8) remaining Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, Health Care Administrator McCarty, Defendant Major Mushinski and Defendant Major McAnnaney, and that judgment be entered in favor of these Defendants and against Plaintiff Sims with respect to his remaining Eighth Amendment cruel and unusual punishment claim. (Doc. 125).

On May 9, 2011, Plaintiff filed Objections to our R&R. (Doc. 132).

On August 19, 2011, the Court issued a Memorandum and Order adopting our Doc. 125 R&R. (Doc. 147). The Court granted Defendants' Summary Judgment Motion (Doc. 106) with respect to all eight (8) remaining Defendants, and entered judgment be in favor of these Defendants and against Plaintiff Sims with respect to his remaining Eighth Amendment cruel and unusual punishment claim. The case was then closed.

Plaintiff filed an appeal to the Third Circuit Court of Appeals. On February 22, 2012, the Third Circuit Court of Appeals issued an Opinion (Per Curiam) and entered a Judgment in which it affirmed, in part, and vacated, in part, the District Court's August 19, 2011 Judgment. (Docs. 157 & 159). The Third Circuit Court vacated the District Court's Judgment (Doc. 34) only with

---

[7]We were assigned this case for pre-trial matters pursuant to 28 U.S.C. §636(b)(1).

respect to Plaintiff's First Amendment retaliation claim in which he alleged that he was terminated from his job in the kitchen at SCI-Coal Township as retaliation for complaining about the Kitchen Department, including a complaint about special food that only prison staff were receiving and a complaint about shortfalls of stock allegedly due to theft. (*See* Doc. 19, Count V, ¶'s 127-147 & Doc. 159-1, p. 3).

On April 10, 2012, this case was reopened. Also, on April 10, 2012, the Court issued a Memorandum and Order and directed service of Plaintiff's Amended Complaint (Doc. 19) on the remaining six (6) Defendants, namely, Varano, Ellett, Kaskie, McMillan, Long and Miller. (Doc. 160). The Court also directed the remaining six Defendants to respond to only Count V, ¶'s 127-146, of Plaintiff 's Amended Complaint. (*See* Doc. 19, Count V, ¶'s 127-146, pp. 22-24). The Court then remanded this case to the undersigned for pre-trial matters.[8]

Thus, the only remaining claim in this case is Plaintiff's First Amendment retaliation claim against Defendants Varano, Ellett, Kaskie, McMillan, Long and Miller. Plaintiff's claim concerns his termination from employment in the kitchen at SCI-Coal Twp. in early 2009, and he alleges that he was terminated due to retaliation for his complaints about the prison Food Service Department.

---

[8]We note that there appears to be a discrepancy as to which one of Plaintiff's Amended Complaints he is proceeding on, *i.e.*, Doc. 9 or Doc. 19. (*See* Doc. 160 & Doc. 163). We find that the proper Amended Complaint at issue is the Doc. 19 filing. In any event, Plaintiff's remaining First Amendment retaliation claim against Defendants Varano, Ellett, Kaskie, McMillan, Long and Miller concerning his termination from employment in the kitchen at SCI-Coal Twp. in early 2009, and alleging that he was terminated due to retaliation for his complaints about the prison Food Service Department is clearly stated in his Doc. 19 Amended Complaint. (Doc. 19, ¶'s 127-146). Also, Plaintiff's allegations that he was terminated from his job due to retaliation for his complaints about the prison Food Service Department are essentially the same in both his Doc. 9 and Doc. 19 Amended Complaints.

(Doc. 19, ¶'s 127-146). As discussed below, Defendants contend that Plaintiff was terminated from his employment in the kitchen due to security reasons after several investigations were made by the prison Security Office into the operations of the SCI-Coal Twp. Food Service Department. Defendants also contend that Plaintiff was not terminated from his job due to retaliation for his complaints about the prison Food Service Department.

On June 11, 2012, after service of Plaintiff 's Amended Complaint (Doc. 19) was ordered (Doc. 160) completed (Doc. 161), Defendants jointly filed a Second Answer to Count V of Plaintiff's Amended Complaint (Doc. 9) with Affirmative Defenses. (Doc. 163).

On June 21, 2012, we issued a Scheduling Order setting the discovery deadline as August 20, 2012, and the dispositive motion deadline as September 20, 2012. (Doc. 165). Discovery then ensued and Plaintiff filed a Motion to Compel which we resolved. (Docs. 174 & 190).

On September 19, 2012, remaining Defendants jointly filed a Second Motion for Summary Judgment, an Appendix with Exhibits, a Statement of Material Facts ("SMF"), and a brief. **(Docs. 170-173).**

On October 3, 2012, Plaintiff filed a Motion for an Extension of Time of 120 days to file his opposition brief to Defendants' Doc. 170 Second Motion for Summary Judgment and his Response to Defendants' Doc. 172 Second Statement of Material Facts. (Doc. 177). We granted Plaintiff's Motion for an Extension but we afforded him 90 additional days from October 10, 2012, to file his opposition brief to Defendants' Doc. 170 Second Motion for Summary Judgment and his Response to Defendants' Doc. 172 Second Statement of Material Facts. (Doc. 179).

On January 9, 2013, Plaintiff filed his second Motion for an Extension of Time to file his

10

opposition brief to Defendants' Doc. 170 Second Motion for Summary Judgment and his Response to Defendants' Doc. 172 Second Statement of Material Facts. (Doc. 194). We granted Plaintiff's second Motion for an Extension insofar as we afforded him until March 11, 2013, to file his opposition brief to Defendants' Doc. 170 Second Motion for Summary Judgment and his Response to Defendants' Doc. 172 Second Statement of Material Facts. (Doc. 195).

On March 11, 2013, Plaintiff filed his opposition brief to Defendants' Doc. 170 Second Motion for Summary Judgment and his Response to Defendants' Doc. 172 Second Statement of Material Facts. (Docs. 198 & 199). Plaintiff attached 9 pages of Exhibits to his Doc. 198 opposition brief. (Doc. 198, pp. 18-26). Some of Plaintiff 's Exhibits pertain to his Eighth Amendment claim which has been dismissed from this case. Plaintiff's Exhibits also include a copy of his April 26, 2009 letter to DOC Culinary Director regarding his allegations of inappropriate conduct by the SCI-Coal Twp. kitchen staff and his claim that he was terminated from his job with dietary due to his reporting of the abuses by staff. Plaintiff also submitted a copy of page 3 from the DOC Ethics Code. Further, Plaintiff submitted a copy of the March 23, 2009 Initial Response to his March 5, 2009 Grievance (#264129) regarding his claim that his removal from his kitchen job and reassignment as an EB Block Worker was due to retaliation. The Response to Plaintiff 's Grievance also pointed out that Plaintiff 's pay after his job reassignment as a Block Worker was the same as his previous pay rate when he was employed in by Food Service Department. Additionally, Plaintiff submitted a copy of Security Lieutenant Long's February 25, 2009 Memo to Deputy Warden Ellett in which Long found evidence that Plaintiff and another inmate were again involved with preparing special food for their consumption during their employment in the prison kitchen. Long

recommended that Plaintiff and the other inmate be transferred to different jobs. Plaintiff's final Exhibit is a copy of his June 29, 2010 Request to Staff Member regarding his request to be reinstated to his job in dietary in the prison kitchen, from which he was removed about one year prior to his Request. Plaintiff claimed that he did not engage in any improper conduct during his employment in the kitchen and that other inmates who were removed from the kitchen were returned to work there. Plaintiff also stated that some of the kitchen staff supervisors supported his return to the kitchen. Plaintiff further stated in his Request that his reason for wanting to return to the kitchen to work included that it "would provide [him] with a decent meal" and give him relief from the all night red-light in his cell. (Doc. 198, pp. 25-26).

Defendants then filed their reply brief in support of their Summary Judgment Motion on March 21, 2013. (Doc. 201).

Thus, Defendants' **Doc. 170** Second Motion for Summary Judgment is ripe for disposition.

## II.    Allegations of Amended Complaint (Doc. 19).[9]

In his Amended Complaint, Plaintiff raised a First Amendment retaliation claim in which he alleged that he was terminated from his job in the kitchen, dietary department, at SCI-Coal Township as retaliation for complaining about the Food Service Department and its staff, including a complaint about special food and side dishes that only prison staff were receiving and a complaint about shortfalls of stock allegedly due to theft. (*See* Doc. 19, Count V, ¶'s 127-147, pp. 22-24 & Doc. 159-1, p. 3). In its February 22, 2012 Opinion, the Third Circuit Court described Plaintiff's

---

[9]We limit our discussion to Plaintiff's remaining First Amendment retaliation claim. As noted above, we find that Plaintiff's Doc. 19 Amended Complaint is the correct pleading on which he is proceeding.

retaliation claim as follows:

> [Plaintiff] also submitted a retaliation claim based on his loss of his prison food services job. From April 2008 through February 2009, Sims worked the prison's dietary department. During this time, he became convinced that prison staff were getting special side dishes that were unavailable to inmates and noticed shortfalls of stock which he attributed to theft. In addition to raising this concern with several of the Defendants, he wrote letters to the IRS, the FBI, the Auditor General's Office, and a state representative, requesting an independent investigation regarding the potential misappropriation of tax dollars. According to his [Amended] Complaint, after he lost his job, Defendants initially told [him] that he was being terminated without cause, but subsequently one of the Defendants told him, "I was ordered by my superiors to remove you from dietary. [Y]ou should be more mindful as to why you write requesting investigations and complaining about how good staff eats."

(Doc. 159-1, p. 3).

As relief in his Amended Complaint, Plaintiff requested compensatory and punitive damages from Defendants in their individual and official capacities as well as nominal damages. Plaintiff also requested a declaratory judgment seeking the Court to declare that Defendants violated his constitutional rights.[10] Additionally, Plaintiff requested injunctive relief, including a request that

---

[10]In his Amended Complaint, Plaintiff requested declaratory relief, seemingly pursuant to 28 U.S.C. § 2201 and § 2202, seeking the Court to declare that alleged past conduct of Defendant prison officials during 2009, at SCI-Coal Twp., violated his constitutional rights. Plaintiff cannot seek declaratory judgment for alleged past violations of his constitutional rights. In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be

the Court order Defendants to discontinue any further retaliation against him due to his law suits and/or grievances. (Doc. 19, pp. 26-27).   Since Plaintiff was transferred from SCI-Coal Township on October 19, 2010, and he is currently confined at SCI-Rockview (*See* Doc. 121), and he does not claim that there is a reasonable likelihood he will be  returned to SCI-Coal Township in the future and again subjected to same conduct, we find that Plaintiff's request for injunctive relief is now moot.  *See Toney v. Bledsoe*, 427 Fed.appx. 74 (3d Cir. 2011); *Kerce v. Lappin,* 2011 WL 864470, *3 (M.D. Pa. 3-9-11)("As a general rule, an inmate's transfer to another prison, or his outright release from incarceration, moots a request for a declaratory judgment or injunctive relief.")(citing *Sutton v. Rasheed,* 323 F.3d 235, 248 (3d Cir. 2003).

        As stated above, the Court previously dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities.  (Doc. 13).

**III.    Section 1983 Standard.**

        In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

---

            subjected to that alleged conduct in the future. Moreover, even if
            defendants violated Blakeney's rights in the past as he alleges, he is not
            entitled to a declaration to that effect. *See Brown v. Fauver,* 819 F.2d
            395, 399-400 (3d Cir.1987) (directing District Court to dismiss
            prisoner's Section 1983 claim for prospective relief where appellant
            "has done nothing more than allege past exposure to unconstitutional
            state action").

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[11] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

## IV. Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the

---

[11]Plaintiff alleged in his amended pleading that the remaining Defendants are employees of the PA DOC. (Doc. 19, pp. 2-3). This is sufficient to show that Defendants are state agents.

record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).[12]

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

---

[12]*See also Allen v. Fletcher*, Civil Action No. 3:07-0722, 2009 WL 1542767, at *2 (M.D. Pa. June 2, 2009) (outlining the summary judgment standard).

**V.    Statement of Material Facts.**

As stated, Defendants properly filed their SMF in support of their Summary Judgment Motion with citation to the evidence (Doc. 172, ¶'s 1-48), as required by Local Rule 56.1, M.D. Pa. Defendants state that their SMF and the undisputed evidence show they did not violate Plaintiff's First Amendment rights. Also, Defendants submitted Exhibits with their SMF to support each one of their contentions. (Docs. 171, Atts. 1-6). Defendants' Exhibits consist of the Declarations of each remaining Defendant with attachments. As mentioned, despite our warning Order, Plaintiff failed to file a proper paragraph-by-paragraph response to Defendants' SMF, and we afforded him with ample opportunity to do so. Additionally, Plaintiff filed a document titled "Plaintiffs (sic) Opposition to Defendants['] Second Statement of Fact[s]" with citation to Defendants' Exhibits. (Doc. 199). However, Doc. 199 is not a proper paragraph-by-paragraph response to all 48 paragraphs of Defendants' SMF as required by Local Rule 56.1, M.D.Pa. Further, while Plaintiff attempts to point out discrepancies in Defendants answers to his Interrogatories and in Defendants' Declarations, he fails to submit any evidence to support his contentions that Defendants' averments in their Declarations are false and that Defendants provided "false and manufactured documents" to support their averments.

Since Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 172), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by their evidence, and since Plaintiff failed to properly respond to Defendants' SMF, we shall accept all of Defendants' facts contained in their SMF. Further, as stated, none of Defendants' facts in their SMF are properly disputed by Plaintiff with citation to the evidence. Thus, we find that

Plaintiff has not properly responded to Defendants' SMF as required by Local Rule 56.1, M.D. Pa. *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers,* 2008 WL 3540526 (M.D. Pa.)*; Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Regardless of Plaintiff's failure to properly respond to Defendants' Statement of Facts, we accept Defendants' Statement of Facts since they are all supported by their undisputed evidence. (Docs. 171). Moreover, we will consider Plaintiff 's Exhibits attached to his opposition brief, detailed above, Doc. 198, pp. 18-26, as well as his responses to Defendants' SMF. (Doc. 199).

Defendants' SMF reveal that Plaintiff was an inmate at the State Correctional Institution at Coal Township ("SCI-Coal Township"). (Doc. 172, ¶ 1). We noted above, the exact dates in which Plaintiff was confined in SCI-Coal Township. During the material time, Defendant Verano was the Superintendent of the penitentiary, Defendant Ellett was the Deputy Superintendent for Centralized Services, Defendant Miller was the Security Captain at the prison, and Defendant Kaskie was the Unit Manager of E-Unit of the prison. Defendant McMillan was the Deputy Superintendent for Facilities Management, and Defendant Long was the Security Lieutenant. (Doc. 172, ¶ 3). As Defendants state in their SMF, in late 2008, pursuant to his position as Security Lieutenant, Defendant Long was assigned to investigate various allegations of improper activity in the kitchen of SCI-Coal Township. (Id. at ¶ 5-6 & Doc. 198, pp. 18-26). Over the course of that investigation,

Plaintiff Bobbie Lee Sims was implicated in improper conduct during his employment in the kitchen at the prison, with circumstantial evidence to support charges against him. (Id. at ¶ 7 & Doc. 198, pp. 18-26). Based on these findings, Plaintiff was removed from his position in the kitchen, and reassigned to a block worker job on the E-Unit on February 27, 2009, where his pay was equal. (Id. at ¶ 7-8, ¶ 15, ¶ 45 & Doc. 198, pp. 18-26).Defendants state that at no time did Defendant Long discuss the investigation, share its findings with inmate Simms, nor retaliate against him. (Id. at ¶'s 9-10). Defendants cite to the uncontroverted Declaration of Defendant Long to support their above stated SMF. (Doc. 171, Att. 2). Also, in his Declaration, Defendant Long avers that he did not retaliate against Plaintiff and that there were legitimate security reasons to remove Plaintiff form his kitchen job. (Id., ¶ 7).

As a result of his termination, Plaintiff Sims filed a Grievance No. 264129 alleging that was fired in retaliation. (Doc. 172 at ¶ 16 & Doc. 198, pp. 18-26). Both Major Miller and later, on appeal, Defendant Varano, denied Plaintiff's Grievance. (Id.). Each of their reviews of Plaintiff's Grievance determined that at no time was Plaintiff retaliated against, and that he was terminated from his kitchen job only as a result of the findings of the Food Service Department investigation. (Id. at ¶ 18-19 & Doc. 198, pp. 18-26). According to Defendants' SMF, Plaintiff Sims was eventually reassigned to the kitchen, however, on July 26, 2010, and he remained there until he was transferred to SCI-Rockview on October 19, 2010. (Id. at ¶ 17). Defendant Ellett made the decision to reassign Plaintiff to the kitchen. Defendant Ellett also averred that she did not retaliate against Plaintiff in connection with his termination from his kitchen job and that there were legitimate security reasons to remove Plaintiff form his kitchen job. (Doc. 171, Att. 6, ¶'s 7-8).

Defendants further state that at no time did the other supervising parties, Defendant Kaskie, Defendant Miller, and Defendant McMillan, retaliate against Plaintiff Sims and that there were legitimate security reasons to remove Plaintiff from his kitchen job. The Declarations of these Defendants substantiate their contentions. (Doc. 171, Atts. 3, 4, & 5). In fact, these supervisory Defendants were unaware that Plaintiff had spoken with outside agencies regarding the theft of food or misappropriation of funds or facilities. (Id. & Doc. 172 at ¶'s 25-38). Further, Defendant Miller was not involved in the decision to remove Plaintiff from his kitchen job. (Doc. 171, Att. 4, ¶ 4).

Additionally, Defendants assert that inmates are subject to removal at will from any given prison job assignment, according to Department Policy DC-ADM 816 ("Inmate Compensation Manual"). (Doc. 172 at ¶ 43 & Doc. 171, Att. 6, ¶ 3).

Defendants state that Defendant Ellett, as the one in charge of Food Services, spoke with Sims regarding the arrival of "kitchen whites" (i.e., uniforms) and staff meals, but she did not mention Sims' lawsuit, as Plaintiff alleges in his Complaint. (Id. at ¶ 46 & Doc. 171, Att. 6, ¶ 6). Defendant Ellett averred that she was never aware that Plaintiff had spoken with outside agencies, but does recall that Plaintiff had tried to incite other inmates in the kitchen, one of the problems, which led to his dismissal from his position there. (Id. & Doc. 171, Att. 6, ¶ 6). Defendants point out that Defendant Ellett averred in her Declaration that after Security Lieutenant Long conducted an investigation into the Food Service Department and complaints about improper conduct occurring in the kitchen resurfaced, Long later on recommended that Plaintiff be terminated from

his kitchen employment. (Doc. 171, att. 6, ¶ 4). Additionally, as stated above, Plaintiff submitted a copy of Security Lieutenant Long's February 25, 2009 Memo to Deputy Warden Ellett in which Long found evidence that Plaintiff and another inmate were involved with preparing special food for their consumption during their employment in the prison kitchen. Long recommended that Plaintiff and the other inmate be transferred to different jobs. (Doc. 198, pp. 18-26 & Doc. 171, Att. 6, Ex. A). Also, Defendant Ellett averred that based on Lt. Long's recommendation, the decision was made to terminate Plaintiff from his kitchen job due to security reasons. Thus, Plaintiff was terminated from his kitchen job on February 27, 2009, and he was reassigned to work as a Block Worker on E-Unit. Pl's pay rate as a kitchen worker of $.42 per hour remained the same for his pay rate as a Block Worker. (Doc. 171, Att. 6, ¶'s 5-6).

On July 26, 2010, Defendant Ellett reassigned Plaintiff to his position at the Food Service Department, as she was no longer concerned about security risks caused by Plaintiff's behavior. (Doc. 172 at ¶ 47 & Doc. 171, Att. 6, ¶ 7). Defendants assert that Defendant Ellett at no time retaliated against Plaintiff. (Id. at ¶ 48). Defendant Ellett avers in her Declaration that she did not retaliate against Plaintiff regarding his termination for his kitchen job, and that his termination was due to legitimate security reasons. (Doc. 171, Att. 6, ¶'s 8).

Although Plaintiff did not file a proper response to Defendants' SMF a required by Local Rule 56.1, M.D.Pa., he did cite to Defendants' Exhibits in a 10-page document titled "Plaintiff's Opposition to Defendants' Second Statement of Material Facts," which we will consider. (Doc. 199). Also, as stated, we consider the Exhibits Plaintiff attached to his opposition brief, Doc. 198, pp. 18-26).

Initially, in his opposition filings to Defendants' Summary Judgment Motion, Plaintiff contends that Defendants failed to provide him with relevant documents during the discovery process. We agree with Defendants (doc. 201, pp. 3-4) that Plaintiff does not specify what documents Defendants failed to produce and how any alleged missing documents would create genuine issues of material fact. We concur with Defendants that Plaintiff merely speculates without any substantiation that additional relevant documents exists which he was not provided. In any event, Defendants represent that they provided Plaintiff with all relevant documents they had and they point to the Exhibits attached to their Declarations.

In his Opposition to Defendants' SMF, Plaintiff contends that during the 2008 investigation into the improper activity in the SCI-Coal Township kitchen, he was not implicated in the misconduct. (Doc. 199, ¶ 1). Plaintiff states that, "Defendant Long has failed to provide ample proof of the occurring investigation." (Id.). Plaintiff challenges the Defendants' assertion that he was fired for security reasons on the grounds that the Defendants have "failed to produce any information of discovery" to prove this assertion. (Id.). As discussed, after Defendant Long's initial investigation into alleged improper conduct in the kitchen, he did not recommend that Plaintiff be removed for his job there. However, when complaints again resurfaced about misconduct in the kitchen, Defendant Long found that there was circumstantial evidence that Plaintiff and another inmate were preparing special food for their own consumption. Since the same allegations of misconduct resurfaced, Defendant Long recommended that in the interests of the prison, Plaintiff and the other inmate should be assigned to other jobs with constant supervision. (Doc. 171, Att. 6, Ex. A & Att. 5, Ex. A). As discussed above, we disagree with Plaintiff and find ample evidence

to support the fact that Defendant Long conducted his investigation into the kitchen and later made the recommendation about Plaintiff 's reassignment of his job. Further, as discussed above, we disagree with Plaintiff and find ample evidence to support Defendants' assertion that Plaintiff was fired for security reasons and not due to retaliation for Plaintiff's complaints about staff improprieties in the kitchen. Also, Plaintiff contends that Defendant Long did discuss his (Plaintiff's) removal from his kitchen job with him (Plaintiff), and that Long told him "I was ordered by my superiors to remove you from dietary, you should be more mindful as to who you write requesting investigations and complaining about how good staff eats." (Doc. 199, p. 2). However, Plaintiff does not submit any evidence to support his allegation that Defendant Long made the statement. In fact, Defendant Long averred in his Declaration that he did not ever discuss with Plaintiff his investigation into the Food Service Department, and that he did not make the final decision to remove Plaintiff from his kitchen job. (Doc. 171, Att. 2, ¶ 6). While Plaintiff states that Defendant Long retaliated against him due to his complaints and requests to outside agencies to conduct an investigation into theft by staff of governmental funds, once again, we point out that despite Plaintiff's assertions in his opposition to Defendants' SMF (Doc. 199), he fails to cite to evidence in the record to support his assertions as required. On the other hand, Defendants have submitted evidence to support each one of their SMF. Thus, Plaintiff's unsupported assertions in his Doc. 199 filing, do not properly controvert Defendants' SMF and Defendants' Declarations. We also find that Plaintiff's attempt to show contradictions in Defendants' SMF and Declarations by referring to their responses to his discovery requests to be unavailing in light to the undisputed evidence Defendants have submitted, which is discussed above. (*See* Doc. 171).

In his Doc. 199 filing, Plaintiff also asserts that Defendant Varano did discuss the terms of his termination with him, and that it was Defendant Varano who ultimately decided he should be fired, not, as the Defendants contend, Defendant Ellett. (Doc. 199 at ¶ 2). Plaintiff again states that, "[Defendant] Verano has also failed to set forth any written documentation of proof in relations to the termination, or what Plaintiff was actually guilty of." (Id.). Defendant Varano avers in his Declaration that he recalled discussing with Plaintiff his termination from his kitchen job, but he does not recall discussing with Plaintiff the "feeding of special meals to staff or having the food service workers wear white uniforms." (Doc. 171, Att. 1, ¶ 8). We do not find that Plaintiff submitted any evidence to dispute Defendant Varano 's averment.

Plaintiff further asserts that a Support Team Review never occurred regarding his termination from Food Services and that, "[Defendant] Kaskie provided false and manufactured documents to indicate a Support Team Review actually occurred, knowing it did not." (Doc. 199 at ¶ 3). We agree with Defendants that attached to Defendant Kaskie's Declaration are tow Exhibits , namely Temporary Job Suspension Notices regarding Plaintiff 's removal from his kitchen job "per security." (Doc. 171, Att. 5, Ex. A). Laos, as Defendants state Plaintiff did not provide any evidence to support his contention that the Notices were false and manufactured. As such, we find that the Notices constitute undisputed evidence showing that Plaintiff was removed from his kitchen job due to security concerns.

Plaintiff (Doc. 199 at ¶'s 4-5) next challenges Defendants' SMF, stating that both Defendants McMillan and Miller were unaware that Plaintiff contacted outside agencies about alleged improper activities in the kitchen at the prison, such as theft of food, and Defendants' SMF stating that both

Defendants McMillan and Miller did not discuss with Plaintiff his removal from his kitchen job or the investigation into the activities in the kitchen. Plaintiff further challenges McMillian's assertion that he did not believe he made the final decision to remove Plaintiff from his kitchen job. (Doc. 172, pp. 10-11). Plaintiff attempts to implicate Defendants McMillan and Miller in his alleged retaliation claim by arguing these Defendants were aware of his removal from his kitchen job and that they knew his removal was due to his whistle blowing. However, as stated above, and as Defendants point out, Plaintiff did not submit any evidence to support his contentions and to contradict Defendants' evidence. Further, as discussed, Defendants did submit evidence relating to Plaintiff 's removal from his kitchen job and, they have demonstrated that they had a legitimate reason to remove Plaintiff from his kitchen job and that they would have taken the same action regardless of Plaintiff 's complaints about the improprieties in the kitchen. Defendants' evidence shows that Defendant Long recommended that Plaintiff be transferred to job with constant supervision and Plaintiff was reassigned to such a job as a Block Worker in EB-Unit. Also, as Defendants state (Doc. 201, p. 6), Plaintiff could have had greater sanctions imposed on him due to the finding that Plaintiff was implicated in the preparing special food for inmate's consumption. Rather, as mentioned, Plaintiff was transferred to a job with equal pay and he admittedly did not suffer any cognizable adverse impact due to his removal from his kitchen job. In fact, as stated, Plaintiff concedes that he only lost access to a "decent meal" and he states that he had to endure more exposure to the red night light in his cell, which did not amount to a constitutional violation. (Doc. 198, Plaintiff's last Exhibit, 6-29-10 Inmate Request to Staff Member).

While Plaintiff continually contends in his Doc. 199 filing in response to Defendants' SMF, that he was never implicated in the misconduct in the kitchen and that, "Defendants' Second Statement of Material Facts should be rejected in its entirety because of the evasiveness and inconsistencies, the misrepresentation of the facts in the case at hand" (Id. at ¶ 6), Plaintiff failed to offer evidence to support his contentions as required.

## VI.    Discussion.

As stated, Plaintiff claims that he was retaliated against as a result of his complaints regarding the conduct of the kitchen staff at SCI-Coal Township to both the prison and DOC supervisors and to outside agencies.  Thus, Plaintiff's retaliation claim is based upon his free speech right, and implicates the First Amendment.  Specifically, Plaintiff alleges the retaliation taken against him was termination from his job in the kitchen with the Food Services Department at SCI-Coal Township as a result of administrative grievances he had filed regarding the kitchen staff (*i.e.*, the staff employed by the DOC) receiving special meals and misappropriating prison funds. (Doc. 19).

Additionally, in his Brief in Opposition (Doc. 198), Plaintiff argues that his administrative grievances regarding the kitchen staff's behavior constituted protected activities.  Also, Plaintiff cites to *Mitchell v. Horn*, 318 F.3d 528, 530 (3d Cir. 2003), to support his argument that   his administrative grievances are the type of activity that is protected activity under any formulation of that standard. (Doc. 198, p. 4-5).

Defendants, in their Brief in Support, concede that the Plaintiff can meet the first element of a retaliation claim, that his activity constitutes a protected activity, under *Mitchell*.  (Doc. 173, p. 6).  Defendants assert they are entitled to summary judgment with respect to Plaintiff's retaliation

claim since "allegations of *de minimis* acts of retaliation do not state a claim under § 1983." (Id. at

7).  Defendants argue, therefore, that Plaintiff was moved from one job to another, equal paying

job, and, as such, he was not retaliated against.  (Id.).  Defendants also dispute the sufficiency of

Plaintiff's evidence to establish the third causal element of a prima facie case of retaliation.

In *Mincy v. Chmielewski*, 2007 WL 707344, *5-*6 (M.D. Pa.), the Court stated:

> Retaliation for expressive activities can infringe upon an individual's rights under
> the First Amendment. *See Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir.2000).
> To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must
> demonstrate (1) that he was engaged in protected activity; (2) that he suffered an
> "adverse action" by government officials; and (3) that there is "a causal link
> between the exercise of his constitutional rights and the adverse action taken
> against him." *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001) (quoting *Allah,* 229 F.3d
> at 225). "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove
> that the conduct which led to the alleged retaliation was constitutionally
> protected." *Rauser,* 241 F.3d at 333; *see also, Jerry v. Williamson,* 2006 WL
> 3741840, 1 (3d Cir.2006).
> While inmates "do not forfeit all constitutional protections by reason of their
> conviction and confinement including those under the First Amendment...,lawful
> Incarceration brings about withdrawal or limitation of privileges and rights for
> various   reasons, including institutional security." *Cooper v. Tard,* 855 F.2d 125,
> 128 (3d Cir.1988); *see also, Pell v. Procunier,* 417 U.S. 817, 822 (1974) (stating
> that "a prison inmate retains those First Amendment rights that are not
> inconsistent with his status as a prisoner or with the legitimate penological
> objectives of the corrections system").

Plaintiff had a First Amendment right to file grievances.  *See Mincy v. Chmielewski*, 2007 WL

707344, *6("The filing of a grievance clearly falls within the ambit of the First Amendment.")(citation

omitted).  Therefore, considering also that Defendants concede the first element, we find that

Plaintiff has met the first element of a retaliation claim as against Defendants, that he was engaged

in protected action *i.e.*, filing administrative grievances.  *See Wheeler v. Beard*, 2005 WL 1840159,

*3  (E.D. Pa. 8-3-05)(citation omitted).   However, we find that Plaintiff has failed to show that he

suffered an "adverse action," or that there was a causal link between his grievances and complaints to outside agencies and, an adverse action taken against him by the Defendants.

1. *Adverse Action*

As stated, in order to proceed on a claim of First Amendment retaliation, a Plaintiff must "show that he suffered an 'adverse action.'" *Mincy*, *supra*. In this case, Plaintiff Sims must show that the transfer from his kitchen position to his job as a Block Worker constitutes an adverse action, such that it amounts to retaliation. *Mitchell*, 318 F.3d at 530. Many courts have elaborated upon this standard, holding that an action is considered adverse when it would "deter a person of ordinary firmness" from exercising the right in question. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). The question before this Court, therefore, is whether the adverse action alleged against Plaintiff, *i.e.*, his transfer from his kitchen jog to his job as a Block Worker, would deter a person of ordinary firmness from exercising the right in question, *i.e.*, filing administrative grievances. Defendants concede in their brief (Doc. 173) that the Fifth Circuit has held termination from a prison job to constitute adverse action for a retaliation claim. However, as Defendants point out, the Court qualified that holding on the grounds that "certain threats are so *de minimis* that they do not rise to the level of being constitutional violations." *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). The undisputed evidence shows that Plaintiff Sims was not terminated from prison employment altogether, merely transferred to another position at the exact same pay. Although Plaintiff attempts the argue that his two jobs were materially different, the differences he articulates, such as "good meals provided by the supervisors," and the different job tasks, are ultimately *de minimis*, as they do not rise to the level of a constitutional violation. (Doc. 198, p. 5). Additionally,

as Defendants point out, and as we have repeatedly stated, the two positions Plaintiff held paid exactly the same. Plaintiff failed to submit any evidence which shows a significant difference between the two positions he held, and that being transferred from one job to the other was an adverse action constituting retaliation required to make out a prima facie claim. To the contrary, the undisputed evidence shows that the jobs Plaintiff was given were not substantially different enough to deter a "person of reasonable firmness" from filing grievances. If the Defendants truly intended to retaliate against Plaintiff, they could have just as easily transferred him to a lower paying job, or taken away his employment altogether, as provided in the Inmate Compensation Manual (Department Policy DC-ADM 816). (Doc. 172 at ¶ 12). We find, therefore, that Plaintiff has not met the second element for a claim of First Amendment retaliation.

2. *Causal Link*

As stated above, in order to proceed on a claim of First Amendment retaliation, a Plaintiff must demonstrate a causal link between the exercise of his rights, and the retaliation taken against him. In the instant case, to proceed, therefore, Plaintiff must show that his termination from his kitchen job was causally linked to his filing of administrative grievances and lodging complaints with outside agencies. The Courts have held that "to establish a causal link, a plaintiff must allege either '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Snyder v. Kraus*, 2010 WL 3419890 (Aug. 27, 2010, E.D. Pa.) (quoting *Lauren W. Ex rel. Jean W. V. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). In *O'Connell v. Sobina*, 2008 WL 144199, *11 (W.D. Pa.), the Court stated "merely alleging the fact of retaliation is insufficient."

The O'Connell Court also stated:

> If the plaintiff proves these three elements, the burden
> shifts to the state actor to prove that it would have taken the
> same action without the unconstitutional factors.  Mt. Healthy,
> 429 U.S. at 287.

*Id.; see also Fortune v. Basemore*, 2008 WL 4525373, *4-*5 (W. D. Pa.)("It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution."); *Sims v. Piazza*, 2009 WL 3147800, *24 (M.D. Pa.)(citing *Rauser v. Horn*, 241 F.3d 333-34 (3d Cir.2001)).  In *Alexander v. Forr*, 2006 WL 2796412 at *22 (M.D. Pa.), the Court stated:

> [I]n establishing the elements of a First Amendment claim of retaliation,
> a plaintiff must come forward with more than "general attacks" upon
> the defendant's motivations and must produce "affirmative evidence"
> of retaliation from which a jury could find that the plaintiff had carried
> his burden of proving the requisite motive. *Crawford-El v. Britton,* 523 U.S.
> 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (internal citations
> omitted).

We agree with Defendants that Plaintiff has not met the causation element for a prima facie retaliation case under § 1983, showing that he was terminated from his kitchen job as a result of his filing grievances and sending complaints to outside agencies. Plaintiff alleges in his Amended Complaint that at some point during his employment in the kitchen with Food Services, he complained to Defendants Varano, Ellett, McMillan, and Long regarding "different food items that was (sic) available to the staff and not inmates," *i.e.*, special dishes.  (Doc. 19, pp. 22-23). Eventually, Plaintiff avers that he articulated these concerns about the kitchen staff in complaints, which he mailed to outside agencies on February 23, 2009. (Id.).  Defendants' evidence shows that

on December 16, 2008, Defendant Long completed his initial investigation into alleged misconduct in the prison kitchen. (Doc. 172, ¶ 6). Plaintiff and another inmate (whose name was redacted) were named in the initial investigation and, there was circumstantial evidence that Plaintiff and the other inmate were involved in a less serious charge, namely, preparing special food for their own consumption. (Doc. 171, Att. 6, Ex. A). Defendant Long stated that "in the interest of department stability [Plaintiff and the other inmate] were allowed to remain employed in their current [kitchen] positions." (Id.). However, the same complaints regarding improprieties in the kitchen arose again, and on February 25, 2009, Defendant Long had prepared a report on the subsequent misconduct in the kitchen. In his February 25, 2009 Memo to Defendant Ellett, Defendant Long recommended that Plaintiff and the other inmate be transferred to different jobs in the prison based on the "best interest of the institution." (Doc. 171, Att. 6 at ¶ 4 & Exhibit A). Defendants' evidence shows that Plaintiff was not the only inmate recommended to be removed from his kitchen job. (Id.). Furthermore, Defendants' evidence shows that no Defendant ever had knowledge that Plaintiff contacted outside agencies prior to his termination. (Doc. 172 & Doc. 171). Plaintiff offers no evidence to establish that his termination was the result of his grievances and complaints, or that the Defendants' justification, the security concerns exposed by Lt. Long's investigation, is pretextual. Additionally, Courts have held that "the defendant can rebut the claim of causation by showing that 'the same adverse action would have taken place in the absence of th protected conduct." *Hoffman v. Dougher*, 2008 WL 148877 (M.D. Pa. Jan. 14, 2008)(citing *Chambers v. Pennsylvania*, 2006 WL 3831377, at 7* (M.D.Pa. Dec. 28, 2006). We find that Defendants have properly rebutted Plaintiff's retaliation claim in this case by pointing to Lt. Long's report recommending

Plaintiff's termination from his kitchen job based on legitimate security concerns.

Plaintiff states in his brief, "Plaintiff contends that the alleged investigations conducted by [Defendant] Long were manufactured and includes false information as to the rest of [Defendants'] interrogatories and declarations." (Doc. 198, p. 15). The only evidence Plaintiff offers however, is attached to his brief (Doc. 198, Exhibits), which, as stated above, include response to Plaintiff 's grievances and a copy of Defendant Long's report citing the security concerns as the reason Plaintiff was recommended to be reassigned to another job. Thus, Plaintiff himself includes in his supporting evidence Defendant Long's Memo to Defendant Ellett, recommending that Plaintiff be transferred to a different job, in which Long wrote, in part, "[t]his office believes it is in the best interest of the institution to at a minimum reassign both of these inmates [Plaintiff Sims and an inmate who is redacted] ... to positions where constant supervision is assured." (Doc. 198, second to last Exhibit). We find that Plaintiff's own Exhibits serve only to demonstrate the Defendants' offered justification, *i.e.*, legitimate security concerns, was the cause of his termination from his kitchen job. Plaintiff 's evidence does not provide any grounds from which a jury could draw the inference of a retaliatory motivation.

Plaintiff creates only a "general attack" on the Defendants' motivations, without any evidence to support his claims. *See Crawford-El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584. In fact, Plaintiff concedes that he "cannot properly prepare or support his claim to defeat summary judgment without the requested [discovery] documents." (Id.). However, as the Defendants correctly indicate, in their Reply Brief, Plaintiff has "failed to specify what documents have not been produced or how they would raise any issues of material fact." (Doc. 201, p. 3). Given the

Plaintiff's failure to provide sufficient evidence, or to name specific evidence he should have been given in discovery and given the fact that Plaintiff only speculates as to the existence of other documents he was not provided, we find that Plaintiff has not met the second element of his retaliation claim, and that he has failed to establish a causal link between his filing of grievances and complaints and, his termination from his kitchen job.

Therefore, we will recommend that the Court grant Defendants' Summary Judgment Motion and enter Judgment in favor of all remaining Defendants and Plaintiff Sims. (Doc. 170).

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Summary Judgment Motion **(Doc. 170)** be granted with respect to all seven (7) remaining Defendants, namely, Unit Manager Kaskie, Superintendent Piazza, Deputy Superintendent McMillian, Deputy Superintendent Varano, Security Captain Miller, and Lieutenant Long. It is also recommended that Judgment be entered in favor of these Defendants and against Plaintiff Sims with respect to his remaining First Amendment retaliation claim.

Finally, it is recommended that the Court close this case.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 26 2013**

33

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOBBIE LEE SIMS, JR., | : | CIVIL ACTION NO. **3:CV-09-0033** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOSEPH PIAZZA, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 26, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


_____        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: June 26, 2013**

_____