UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOBBIE LEE SIMS, JR., | |
| Plaintiff, | Civil No. 3:09-CV-33 |
| v. | (Judge Kosik) |
| JOSEPH PIAZZA, et al., | |
| Defendants. | |

FILED
SCRANTON
MAR 3 1 2014
PER ____
DEPUTY CLERK

## MEMORANDUM

Before the Court are Plaintiff's objections to a Report and Recommendation ("R&R") issued by Magistrate Judge Thomas M. Blewitt. For the reasons that follow, we will adopt in part and deny in part the R&R of the Magistrate Judge and grant Defendants' Second Motion for Summary Judgment.

### I. PROCEDURAL HISTORY

On January 8, 2009, Plaintiff Bobbie Lee Sims, Jr., formerly an inmate at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"), filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983.[1] As this case has an extensive procedural history, the Court recites only the history pertinent to Plaintiff's remaining First Amendment retaliation claim relating to the loss of his prison employment.

Plaintiff's First Amendment retaliation claim was dismissed on screening on September

---

[1] Plaintiff is currently an inmate at SCI-Rockview. His remaining First Amendment retaliation claim relates to his confinement at SCI-Coal Township.

1

28, 2009. (Doc. 34.) On September 6, 2011, Plaintiff filed a Notice of Appeal on various issues. (Doc. 148.) On February 22, 2012, the Third Circuit Court of Appeals issued an Opinion (Per Curiam) and entered a judgment that affirmed in part and vacated in part this Court's August 19, 2011 Judgment (Docs. 157, 159), and vacated this Court's Judgment (Doc. 34) with respect to Plaintiff's First Amendment retaliation claim relating to the loss of his prison employment.

The Court directed service of Plaintiff's Amended Complaint (Doc. 19) on the remaining six Defendants, David Varano, Ronda Ellett, Larry Kaskie, Robert McMillan, R.E. Long, and Michael Miller, and directed them to respond to Count V, Paragraphs 127-47, of the Amended Complaint. (Doc. 160.)

After various discovery motions, Defendants filed a Second Motion for Summary Judgment (Doc. 170), Appendix (Doc. 171), Statement of Material Facts ("SMF") (Doc. 172), and a brief in support of their motion (Doc. 173), on September 19, 2012. After being granted extensions of time to respond, on March 11, 2013, Plaintiff filed a brief in opposition (Doc. 198), answer to Defendants' SMF (Doc. 199), and "Objections/Response" to Defendants' motion for summary judgment (Doc. 200). Defendants filed a reply brief (Doc. 201) on March 21, 2013.

On June 26, 2013, Magistrate Judge Blewitt filed an R&R (Doc. 204), recommending that we grant Defendants' Second Motion for Summary Judgment. After being granted an extension of time to file objections, Plaintiff filed his objections on August 29, 2013 (Doc. 207). On September 4, 2013, Defendants filed a response (Doc. 208) to Plaintiff's objections. After being given another extension of time, Plaintiff filed a reply (Doc. 211) on November 19, 2013. We review the Plaintiff's objections, related briefs, and the Magistrate Judge's R&R accordingly.

## II. FACTUAL BACKGROUND

Plaintiff's only remaining claim is his First Amendment retaliation claim relating to his prison employment. Therefore, the Court only recites the pertinent facts.

Plaintiff was employed in the Food Service Department from May 23, 2008 until February 25, 2009. While employed in the Food Service Department during the time in question, Plaintiff received .42 cents per hour and worked from 0500 to 1200. (Doc. 198, Pl.'s Opp. Brief, at 5.) Plaintiff exercised his First Amendment rights and filed a § 1983 civil rights complaint against various prison officials on January 8, 2009 (Doc. 1), and an Amended Complaint (Doc. 9) on February 23, 2009.

In December, 2008, the Security Office investigated the Food Service Department after complaints concerning "improper use of the office copier by inmate workers, lack of accountability, overfamiliarity between inmates and staff and horseplay between inmates and staff." (Doc. 171, App. to Defs' Second MSJ, Attach. 2, Decl. of Long, at 3.) On December 16, 2008, Defendant Long, a Security Lieutenant, investigated the allegations and submitted his findings and recommendations to Defendant McMillan, Deputy Superintendent for Facilities Management. (Id.) At that time, Defendant Long recommended that a percentage of the workers be removed or reassigned. (Id.) Plaintiff was implicated on a minor charge of preparing special food for inmate consumption, but he was not removed at that time. (Id., Attach. 6, Decl. of Ellett, Ex. A, Letter.)

After the same complaints arose again, the Security Office conducted another investigation of the Food Service Department. (Id.) Defendant Long declared that there was "some circumstantial evidence to support some charges against [the Plaintiff], including

3

preparing special food for inmates' consumption." (Id., Attach. 2, Decl. of Long, at 4.) On February 25, 2009, Defendant Long wrote a letter to Defendant Ellett, Deputy Superintendent for Centralized Services, informing Defendant Ellett of the investigation findings and recommending that Plaintiff be reassigned to a work position that had constant supervision. (Id., Attach. 6, Decl. of Ellett, Ex. A, Letter.) As a result, Plaintiff was reassigned to a Block Worker on E-Unit with a pay rate of .42 cents per hour. (Id., Attach. 6 at 5.) As a Block Worker, Plaintiff worked from 0800 to 1200, and his job duties consisted of wiping down telephones, sweeping, and mopping. (Doc. 198, Pl.'s Opp. Br., at 5.) Plaintiff disputes the existence of any complaints made about him and any findings of wrongdoing. (Doc. 199, Pl.'s Opp. to Defs' SMF, at 2.)

Plaintiff asserts that he wrote a letter to the IRS, FBI, Auditor General's Office, and a state representative, on February 23, 2009, two days before he was reassigned out of the Food Service Department, requesting an independent investigation of the misappropriation of tax dollars. (Id. at 9.) Plaintiff alleged that prison staff were receiving special side dishes not available to inmates and there were unaccountable shortages in the stockroom. (Id.) Defendants dispute the existence of this letter, and this letter was not produced during discovery. The Court notes that in Plaintiff's April 26, 2009, letter to Marcia Noles, Director of Food Services, Bureau of Health Care Services, Plaintiff discussed the existence of the February 23, 2009 letter. (Doc. 198, Pl.'s Opp. Br., Attach.)

On February 25, 2009, Plaintiff asserts he spoke with Defendant Ellett about the issue of staff receiving special meals and whether the inmates who work in dietary would be receiving their white clothing for work. (Doc. 199, Pl.'s Opp. to Defs' SMF, at 9.) Defendant Ellett declared that she did have a conversation with Plaintiff about staff meals and kitchen whites, but

she did not know or discuss with Plaintiff his contact with outside entities. (Doc. 171, App. to Defs' Second MSJ, Attach. 6, Decl. of Ellett, at 6.)

On March 3, 2009, Plaintiff filed a grievance relating to his transfer out of the Food Service Department. (Id., Attach. 1, Decl. of Varano, Ex. A, Grievance.) On March 5, 2009 and March 12, 2009, Support Team Actions were conducted that informed Plaintiff of his transfer out of the Food Service Department "per security." (Id., Attach. 5, Decl. of Kaskie, Ex. A, Temp. Job Susp. Notice.) On July 26, 2010, Defendant Ellett reassigned Plaintiff to the Food Service Department, and he held that position until he was transferred to SCI-Rockview on October 19, 2010.[2]

## III. STANDARD OF REVIEW

### A. Section 1983 Standard

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements; (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parrat v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993). Section 1983 does not create substantive rights; it "merely provides a mechanism for enforcing individual rights 'secured' elsewhere... 'One cannot go into court and claim a violation of § 1983 - for § 1983 by itself does not protect anyone against anything.'" *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284-85 (2002) *quoting Chapman v. Houston Welfare Rights Org.,* 451 U.S. 287, 294 (1981).

---

[2] The Court notes that this reassignment date as declared by Defendant Ellett, differs from the date of transfer, September 26, 2010, as indicated in the Work Assignments document submitted as an attachment by Defendant in Document 192.

In order for § 1983 liability to be appropriate, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) *quoting Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge or acquiescence," and must be pled with particularity. *Id., see also Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (holding civil rights complaint adequate where it states time, place, conduct and persons responsible); *Hall v. Pa. State Police*, 570 F.2d 86, 89 (3d Cir. 1978) (holding a plaintiff's mere assertions that his rights have been violated "without facts upon which to assess the substantiality of the claim" were insufficient to support a § 1983 action).

## B. Motion for Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Id. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In doing

so, the court must accept the non-movant's allegations as true and resolve any conflicts in his favor. Id. (quoting Gans v. Mundy, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985)); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

### IV. DISCUSSION

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.3. Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

In the case at hand, Plaintiff made numerous objections to the Magistrate Judge's June R&R, thus requiring a *de novo* review of those issues. Plaintiff objected to the Magistrate Judge's finding that Plaintiff's document, "Plaintiff[']s Opposition to Defendants['] Second Statement of Fact[s]" (Doc. 199), was not in accordance with Local Rule 56.1 because it did not properly respond to Defendants' SMF (Doc. 171). Plaintiff also objected to the Magistrate Judge's finding that the reassignment of employment positions was not an adverse action and that there was no causal connection between Plaintiff's exercise of his constitutional right and his job reassignment. Additionally, Plaintiff requests the Court to order Defendants to turn over requested discovery or conduct an in camera review of the documents not previously handed over

to him in discovery. The Court discusses each of Plaintiff's objections in turn.

Plaintiff objects to the Magistrate Judge's treatment of the parties' SMF because he asserts that he did properly respond to Defendants' SMF in accordance with Local Rule 56.1. The Court agrees with the Magistrate Judge that the Plaintiff did not properly respond to Defendants' SMF, and the Court is also guided by the principle that a court should construe a *pro se* plaintiff's work liberally. The Magistrate Judge accepted all of Defendants' SMF as true as they were supported by undisputed evidence, as well as Plaintiff's exhibits attached to his opposition brief (Doc. 198) and his responses to Defendants' SMF (Doc. 199). Therefore, we find that the Magistrate Judge properly considered Defendants' undisputed SMF and Plaintiff's responses to those SMF and his exhibits.

The Court next considers Plaintiff's objections to the Magistrate Judge's findings that there was no adverse action when Plaintiff was reassigned employment, or causal connection between the reassignment and the exercise of his constitutional rights. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." Hawkins v. Brooks, 694 F. Supp. 2d 434, 441 (W.D. Pa. 2010) (quoting White v. Napolean, 897 F.2d 103, 111-12 (3d Cir. 1990)). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of the constitutional right." Rauser v. Horn, 241 F.3d 330, 332 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)).

In the seminal Third Circuit case, Rauser v. Horn, the Third Circuit Court of Appeals set forth three requirements a prisoner-plaintiff must establish to state a prima facie claim of

retaliation: (1) "the conduct which led to the alleged retaliation was constitutionally protected[;]" (2) "he suffered some 'adverse action' at the hands of the prison officials[;]" and (3) "his exercise of a constitutional right was a substantial or motivating factor in the challenged decision." Rauser, 241 F.3d 330 at 333-34 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 386, 399 (6th Cir. 1999) (*en banc*); Allah, 229 F.3d at 225). If the plaintiff states a prima facie case, the burden then shifts to the defendants to prove that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Defendants concede that Plaintiff is able to meet the first element of the retaliation claim, that the conduct that led to the alleged retaliation, the filing of a § 1983 claim and correspondence with outside agencies reporting alleged misappropriation of state funds, was constitutionally protected. We agree, and therefore examine whether Plaintiff established a prima facie claim for retaliation by meeting the other two elements.

Plaintiff must show that he suffered an "adverse action" at the hands of the Defendants. The adverse action must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). The Magistrate Judge agreed with the Defendants and found that Plaintiff did not suffer an adverse action when he was transferred from his food service job to a Block Worker since the differences did not "arise to the level of being [a] constitutional violation[]" and are therefore, *de minimis*. Thaddeus-X, 175 F.3d at 397. The Magistrate Judge based this conclusion on the fact that Plaintiff's prison employment was not completely terminated; instead, he was transferred to another position that received the same pay of .42 cents per hour.

Plaintiff objects to the Magistrate Judge's findings that the employment transfer was not an adverse action. Plaintiff states that although his pay rate of .42 cents per hour remained the same when he transferred jobs, the change was adverse because he worked less hours as a Block Worker and therefore made less pay. Defendants respond by stating that if they really wanted to retaliate against the Plaintiff, they could have not reassigned him to any employment after finding he was involved with wrongdoing in the kitchen.

In determining whether a person of ordinary firmness would be deterred from exercising his constitutional rights, courts within the Third Circuit have considered various factors. For example, in Fiore v. Holt, 435 F. App'x 63 (3d Cir. 2011), the Third Circuit Court of Appeals looked to whether an inmate gave evidence that the employment position he was transferred to was "less preferable than his prior job." Fiore, 435 F. App'x at 68 (finding that the plaintiff's description of the new job of "where he had to sit all day long from 7:30 AM released from lunch returned at 12:00 PM and had to stay there until recall for the 4:00 institutional count" was not sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights). In Hawkins v. Brooks, 694 F. Supp. 2d 434 (W.D. Pa. 2010), the district court looked to whether the plaintiff alleged that transfer to a new unit was "less desirable, subjected her to greater hardship, or placed her at greater risk of harm." Hawkins, 694 F. Supp. at 444. In Floyd v. Dugal, No. Civ. A. 99-1616, 2003 WL 23101802 (E.D. Pa. Dec. 16, 2003), the court found that a reasonable factfinder could find an adverse action when a transfer of prison employment resulted in "a significant loss in pay and [the plaintiff was] forced . . . into jobs in less interesting environments." Floyd, No. Civ. A. 99-1616 at *7. And lastly, the district court in Bracey v. Price, No. 09-1662, 2012 WL 849865 (W.D. Pa. March 13, 2012), found that although plaintiff's

transfer into a "hard cell" for three days where he lost radio and television privileges for approximately one month due to the cell transfer "appear objectively *de minimus* for an inmate already confined in administrative custody[,] . . . under existing law, . . . [it] may be sufficient . . ." to send to the factfinder. Bracey, No. 09-1662 at *18 (citing Allah, 229 F.3d at 225-6; Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012)).

Additionally, in the February 22, 2012 opinion remanding Plaintiff's retaliation claim, the Third Circuit Court of Appeals directed this Court to a Tenth Circuit decision, Williams v. Meese, 926 F.2d 994 (10th Cir. 1991), to support its conclusion that "termination of prison employment is a sufficient deterrent to meet the pleading standard for a retaliation claim." (Doc. 159 at 8.) In Williams v. Meese, the Tenth Circuit Court of Appeals remanded a retaliation claim since it found that "although plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another." Williams, 926 F.2d at 998.

Here, Plaintiff claims that the transfer of prison employment from a food service worker to a Block Worker was an adverse action for various reasons. First, Plaintiff states he received less overall pay since he worked less hours as a Block Worker. When Plaintiff worked in the Food Service Department, he worked from 0500 to 1200. Plaintiff made meals for inmates in general population and enjoyed his job and additional perks offered to him by the staff. He states that he selected those early hours "for the purpose of being out of his cell as early as possible in order to escape the all night red-light illumination that caused him sleep deprivations[,]" and which was the subject of his Eighth Amendment claim that was previously dismissed by the Court. In comparison, as a Block Worker, Plaintiff's hours were 0800 to 1200, and his job duties

11

consisted of wiping down telephones, sweeping, and mopping floors.

Looking at the various non-exclusive factors courts have considered to determine whether a person of ordinary firmness would be deterred from exercising a constitutional right, the Court disagrees with the Magistrate Judge and finds that the transfer in employment was not *de minimis*. In looking at whether Plaintiff's new job as a Block Worker is less preferable or desirable than his previous job, Plaintiff has stated that he enjoyed working in the kitchen because he was able to escape the red-light, which was the subject of his Eighth Amendment claim, and that he enjoyed doing his job and the added perks of working in the kitchen. Plaintiff has also stated that he makes less pay because he is working less hours as a Block Worker. A reasonable factfinder could find that such a transfer of employment would deter a prisoner of ordinary firmness from exercising his First Amendment rights to file an outside complaint against the department with which he is currently employed and to file a civil rights action against others in the prison.

Plaintiff must lastly establish a causal connection by showing that the exercise of his First Amendment rights was a substantial or motivating factor for the transfer of his employment. In proving a causal connection, the Third Circuit Court of Appeals has stated that the plaintiff can rely on a "broad array of evidence." Marra v. Phila. Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007). The Marra court went on to state:

> In certain narrow circumstances, an "unusually suggestive" proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997); see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (discharge of plaintiff two days after filing EEOC complaint found to be sufficient, under the circumstances, to establish causation). Conversely, however, "[t]he mere passage of time is not legally conclusive proof against

> retaliation." Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993) (citation omitted); see also Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997) ("It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn."). Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to . . . other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000).

Marra, 497 F.3d at 302.

The Magistrate Judge agreed with the Defendants and found that Plaintiff did not meet the causation element. Plaintiff objects to this finding by the Magistrate Judge primarily by arguing that the documents submitted by Defendants to support their motion for summary judgment, were false and manufactured.

As the temporal proximity of events are applicable as to whether Plaintiff established a causal connection, the Court recites the pertinent dates. Plaintiff filed his § 1983 civil rights complaint against various prison officials on January 8, 2009 (Doc. 1). Plaintiff then filed an Amended Complaint (Doc. 9) on February 23, 2009. Also, on February 23, 2009, Plaintiff asserts he wrote letters to the IRS, FBI, Auditor General's Office, and a state representative, requesting an independent investigation of the misappropriation of tax dollars, since he was convinced prison staff were receiving special side dishes not available to the inmates and there were unaccountable shortages in the stockroom. Plaintiff also alleges he brought his concerns to the attention of Defendants Varano, Ellett, McMillian, and Long.

On February 25, 2009, Plaintiff asserts he spoke with Defendant Ellett about the issue of

staff receiving special meals and whether the inmates who work in dietary would be receiving their white clothing for work. Defendant Ellett declared that she did have a conversation with Plaintiff about staff meals and kitchen whites, but does not recall him contacting any outside agencies about an investigation.

Also, on February 25, 2009, Defendant Long wrote a letter to Defendant Ellett recommending that Plaintiff be reassigned to an employment position with constant supervision. (Doc. 192, Defs' Suppl. Ans. to Pl.'s Req. for Prod. of Docs, at 4.) Defendant Long declared that this recommendation was the result of an investigation into the Food Service Department for allegations of "improper use of the copier by inmate workers, lack of accountability, overfamiliarity between inmates and staff and horseplay between inmates and staff[,]" conducted in late 2008 and later informal investigations. (Doc. 171, Defs' App. to Second MSJ, Attach. 2, Decl. of Long, at 2.)

On March 3, 2009, Plaintiff filed a grievance relating to his transfer of employment. On March 5, 2009 and March 12, 2009, Support Team Actions were conducted that stated, "Removed as per security." (Doc. 171, Attach. 5, Decl. of Kaskie, Ex. A, Temp. Job Susp. Notice.) On April 26, 2009, Plaintiff wrote a letter to Health Care Services, which mentions Plaintiff's previous contact with the Auditor General, FBI, and state representative. (Doc. 192, Def.'s Suppl. Ans. to Pl.'s Req. for Prod. of Docs, at 11.) Defendant Ellett reassigned Plaintiff to the Food Service Department on July 26, 2010, and he held that position until he was transferred to SCI-Rockview on October 19, 2010.

Plaintiff maintains that his § 1983 civil rights action filed on January 2, 2009 with an amended complaint filed on February 19, 2009, and his contact with outside entities by letter on

February 23, 2009, was a substantial or motivating factor for his transfer of employment on February 25, 2009. In Jalil v. Avdel Corp., the Third Circuit Court of Appeals found that the plaintiff demonstrated a causal connection when the plaintiff was terminated from employment two days after the defendant received plaintiff's Equal Employment Opportunity Commission claim. Jalil, 873 F.2d at 708. Although the Defendants dispute the existence of the February 23, 2009 letter, the Court finds this is a dispute of material fact as Plaintiff's letter to Health Care Services mentions the letter purportedly sent on February 23, 2009. Therefore, in viewing the facts in the light most favorable to the Plaintiff, the Court finds that he was transferred from his employment two days after sending a letter to outside entities asking for an investigation into prison officials receiving special side dishes and shortages in the storeroom, and six days after filing an amended complaint in the present action. The Court finds that the span of two and six days is "unusually suggestive" and is sufficient to establish causal connection. See Marra, 497 F.3d at 302.

    Therefore, the Court disagrees with the Magistrate Judge and finds that Plaintiff stated a prima facie claim of retaliation. The burden then shifts to the Defendants to show that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. The Magistrate Judge found that Defendants properly rebutted Plaintiff's claim by pointing to Defendant Long's letter, recommending Plaintiff's termination from his food service job due to security concerns. Plaintiff objects to this finding and states that Defendant Long's letter was false and that he was not implicated in a late 2008 investigation or else he would have been removed at that time for any wrongdoing and not later reassigned to his same position. Plaintiff does not offer any proof

that Defendant Long's letter concerning the investigation is false. Instead, he bases his conclusion on the fact that he was not removed as a result of the December 16, 2008 report.

As a result of the December, 2008 investigation, Defendant Long recommended that a certain percentage of the inmates be removed or reassigned from the Food Service Department. Plaintiff was not removed at that time. Defendant Long declared that "[n]ot all of the inmate workers could be removed from the kitchen all at once . . . [because] [t]hey needed to keep some . . . in order to train others to replace them." (Doc. 171, Attach. 2, Decl. of Long, at 5.) Defendant Long also declared that there were later complaints that led to an informal investigation of the Food Service Department, and that there was circumstantial evidence to support charges against the Plaintiff, including preparing special food for inmates' consumption. (Id. at 4.) Defendant Long's February 25, 2009 letter to Defendant Ellett recommended that Plaintiff be removed from his food service assignment to a position with constant supervision. (Id., Attach. 6, Decl. of Ellett, Ex. A, Letter.) In March, 2009, two Support Team Hearings were held, and Plaintiff was informed of his removal from the Food Service Department for general security concerns. (Id., Attach. 5, Decl. of Kaskie, Ex. A.)

The Court agrees with the Magistrate Judge and finds that Defendants successfully rebutted Plaintiff's prima facie claim by showing that they would have made the same decision for "reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. Defendants submitted sufficient evidence to show that Plaintiff was removed from his Food Service Department position for security reasons after investigations into the department. Defendants' legitimate penological interest is to maintain good order and discipline; therefore, Defendants' decision to reassign Plaintiff to a position with more supervision was reasonably

related in light of complaints received, and investigations conducted, as to Plaintiff's conduct while employed in the Food Service Department.

Lastly, the Court denies Plaintiff's request to order the production of documents or an in camera review of complaints concerning the Plaintiff while employed in the Food Service Department or the results of the Security Office's investigation. This matter was previously addressed by the Court on January 31, 2013, when the Plaintiff's motion for reconsideration (Doc. 196) of the Magistrate Judge's Order (Doc. 190) on Plaintiff's Motion to Compel (Doc. 174) was denied.

## V. CONCLUSION

For the reasons set forth above, we will adopt in part and deny in part the Magistrate Judge's recommendation and grant Defendants' Second Motion for Summary Judgment (Doc. 170). An appropriate order is attached.